390 So.2d 270 (1980)
Rena VINCENT, Plaintiff and Appellant,
v.
Jerome J. ROMAGOSA et al., Defendants and Appellees.
No. 7785.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
Rehearing Denied December 1, 1980.
Writ Refused January 26, 1981.
Gerald Block, Lafayette, for plaintiff-appellant.
Voorhies & Labbe, Marc W. Judice, Lafayette, for defendants-appellees.
Before CULPEPPER, SWIFT and DOUCET, JJ.
CULPEPPER, Judge.
This is a medical malpractice case. The plaintiff, Rena Vincent, alleges she suffered injury as a result of negligent medical treatment by the defendant, Dr. Jerome J. Romagosa, a specialist in radiology. Also named as defendants are the partnership of Romagosa, Klinger, Kraemer, Steiner, Dercier and Kuebler, and the members of the partnership individually. Defendants filed an exception of lack of jurisdiction over the *271 subject matter and an exception of lack of venue. The trial judge sustained both exceptions and dismissed plaintiff's suit. We affirm the dismissal of plaintiff's suit, but on other grounds.
The issues are: (1) Does the court have subject matter jurisdiction? (2) Is the suit filed in the proper venue? (3) Is the exception, titled by defendants as an exception to the court's jurisdiction over the subject matter, actually an exception of prematurity? (4) If so, is the suit premature? (5) Is plaintiff relieved of the pre-suit medical review panel requirements by the impossibility of complying with the requirements of LSA-R.S. 40:1299.48(C), that all members of the panel practice in the same community or locality as the defendant physician?
The general facts are that in April of 1977 plaintiff underwent a hysterectomy performed by a Dr. Fell. Following the hysterectomy, Dr. Fell referred plaintiff to Dr. Jerome R. Romagosa, a radiologist practicing in Lafayette. During the period July through August, 1977, Dr. Romagosa administered certain radiology treatments. Following these treatments, plaintiff developed certain abnormalities in her abdomen, which she alleges were caused by negligent treatment by Dr. Romagosa.

SUBJECT MATTER JURISDICTION
Although, as hereinafter explained, we conclude defendants' pleading, entitled "Exception to Subject Matter Jurisdiction", is actually an exception of prematurity, we will nevertheless address the question of subject matter jurisdiction. This type of jurisdiction cannot be conferred on the court by consent or by waiver of the parties. LSA-C.C.P. Article 3. Thus, regardless of whether defendants filed an exception to subject matter jurisdiction, we will consider the issue.
In support of their pleading labeled "Exception to Subject Matter Jurisdiction", defendants cite LSA-R.S. 40:1299.47, which provides in pertinent part:
"A. All malpractice claims against health care providers covered by this Part... shall be reviewed by a medical review panel established as hereinafter provided....
"B. No action against a health care provider covered by this Part, or his insurer, may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section and an opinion is rendered by the panel. By agreement of both parties, the use of the medical review panel may be waived."
Since no medical review panel was established in this case, defendants contend the above statutory provisions divest the district court of subject matter jurisdiction until after the medical review panel has been chosen and has rendered an opinion.
Plaintiff's answer to this argument is that LSA-La. Constitution of 1974, Article 5, Section 16, grants to the district courts "original jurisdiction of all civil and criminal matters, except as otherwise authorized by the Constitution." Under this constitutional provision, plaintiff argues the original jurisdiction of the district courts to hear medical malpractice cases cannot be divested, diminished or infringed upon by legislative enactment.
In Everett v. Goldman, 359 So.2d 1256 (La.1978), plaintiff filed a medical malpractice action. The defendant physician filed an exception of prematurity on the grounds that plaintiff had failed to submit her claim to a medical review panel. In opposition to the exception of prematurity, plaintiff contended the provisions of R.S. 40:1299.47, requiring a pre-suit medical review panel, are unconstitutional for several reasons, including the denial of access to the courts. In rejecting plaintiff's argument, our Supreme Court held the requirement that the plaintiff first submit her claim to a medical review panel, before filing suit in the district court, does not violate constitutional rights to court access.
Although Everett v. Goldman, supra, does not discuss the argument made by defendants in the present case that the district *272 court lacks jurisdiction over the subject matter until after a medical review panel has rendered an opinion, we can infer that the court would have rejected such an argument had it been made. The district court did actually take jurisdiction over the subject matter, even though no review panel had acted. Under LSA-C.C.P. Article 3, jurisdiction over the subject matter cannot be conferred by the parties, and a judgment by a court which lacks jurisdiction over the subject matter is void. We must assume our Supreme Court considered the district court had jurisdiction over the subject matter. Otherwise, it would have dismissed the suit for lack of such jurisdiction.
Defendants cite Anderson v. State, 363 So.2d 728 (La.App.2d Cir. 1978), writs denied, La., 364 So.2d 600, for the general rule that plaintiff must exhaust his administrative remedies before seeking judicial review. In that case, employees of a police jury contended they were de facto deputy sheriffs and as such entitled to supplemental pay. The State filed an exception of prematurity, based on plaintiffs' failure to first submit their claim to an administrative board created by R.S. 33:2218.7 to determine eligibility for supplemental pay. Plaintiffs attacked the constitutionality of the statute creating the board on the grounds that it divested district courts of the original jurisdiction granted them by the Louisiana Constitution. The court cited the Administrative Procedure Act, LSA-R.S. 49:951, et seq., as authorizing legislative creation of such administrative boards, provided there is a right to judicial review of the findings of the administrative board. As regards the jurisdictional issue, the court stated:
"The constitutional article vesting district courts with original jurisdiction of civil matters and exclusive original jurisdiction of cases involving the state does not preclude the legislature from creating administrative agencies with quasi-judicial duties, and whose decisions are subject to judicial review. `Original' and `exclusive' are terms regulating jurisdiction of cases as between the several courts established by the constitution. The terms do not preclude the exercise of jurisdiction by administrative agencies over matters which are not ripe for judicial action."
In Anderson v. State, as in Everett v. Goldman, there was no exception to the district court's jurisdiction over the subject matter. However, the district court took jurisdiction, and the Court of Appeal did not question this. Again, we must assume the Court of Appeal considered the district court had jurisdiction over the subject matter.
Plaintiff cites Godchaux Sugars v. Ockman Godchaux Sugars, Inc., 73 So.2d 577 (La.1954), Douglas Public Service Corporation v. Gaspard, 74 So.2d 182 (La.1954) and Roksvaag v. Reily, 113 So.2d 285 (La.1959) as cases holding that certain statutes creating required pre-suit administrative procedures violated the constitutional grant of original jurisdiction to the district courts. Our answer to this argument is that the specific pre-suit procedure at issue here, i. e., the medical review panel, has been held constitutional by our Supreme Court in Everett v. Goldman, supra. We conclude the district court does have jurisdiction over the subject matter of the present suit.

VENUE
As we understand defendants' argument in support of their exception to venue, it is the same as their argument regarding jurisdiction. They contend the district court does not have venue until after a medical review panel has rendered an opinion. For the reasons stated above in our discussion of jurisdiction, this argument has no merit. Moreover, the proper venue is clearly in Lafayette Parish, where the alleged malpractice occurred, and where the defendant physicians are domiciled.

IS EXCEPTION LABELED "TO SUBJECT MATTER JURISDICTION" ACTUALLY AN EXCEPTION OF PREMATURITY?
Defendants urge that if we hold the court has subject matter jurisdiction, we treat their exception as being one of prematurity. *273 Clearly, the grounds urged in support of the exception are actually the basis of the dilatory exception of prematurity. In Everett v. Goldman, supra, our Supreme Court sustained an exception of prematurity based on the identical grounds urged here, i. e., the suit is premature because plaintiff has failed to submit his claim to a medical review panel. Thus, we conclude defendants have actually filed an exception of prematurity.

IS THIS CASE PREMATURE?
Under the holding by our Supreme Court in Everett v. Goldman, supra, the present case is clearly premature, because no medical review panel has been established nor rendered an opinion.

MUST PHYSICIAN PANEL MEMBERS RESIDE IN SAME LOCALITY AS DEFENDANT?
After this suit was filed on May 7, 1979, the defendant, Dr. Romagosa, wrote a letter to plaintiff of date, May 14, 1979, advising that defendant had chosen Dr. Joseph V. Schlosser of New Orleans to serve on the medical review panel. On May 23, 1979, plaintiff filed a motion to reject Dr. Schlosser as a member of the medical review panel on the grounds that his selection is prohibited by R.S. 40:1299.47. In his brief, plaintiff argues the selection of Dr. Schlosser violates a requirement of the statute that physicians on the panel be from the same community or locality as the defendant. Additionally, plaintiff argues on appeal that since Dr. Romagosa is a specialist in radiology and the only other radiologists in Lafayette are partners of Dr. Romagosa and also defendants in this suit, the provisions of the statute requiring a medical review panel are unenforceable in this case, and his suit is therefore not premature. Plaintiff calls attention to a stipulation, entered into at the hearing on the exceptions to jurisdiction and venue, that Dr. Romagosa is a radiation therapist, and the only other radiation therapists in the Lafayette area are partners of Romagosa.
LSA-R.S. 40:1299.47 provides in pertinent part:
"C. Except as provided in Paragraph 5 of this Subsection, the medical review panel shall consist of three physicians who hold unlimited licenses to practice medicine in Louisiana and one attorney.
* * * * * *
"The qualification and selection of the physician members of the medical review panel shall be as follows:
"(1) All physicians engaged in the active practice of medicine in this state who practice in the same community or locality as does the health care provider against whom claim is made, whether in the teaching profession or otherwise, who holds a license to practice medicine in the state of Louisiana, shall be available for selection.
"(2) Each party to the action shall have the right to select one physician and upon selection, said physician shall be required to serve.
"(3) Where there are multiple plaintiffs or defendants, there shall be only one physician selected per side. The plaintiff, whether single or multiple, shall have the right to select one physician and the defendant, whether single or multiple, shall have the right to select one physician.
"(4) A panelist so selected and the attorney member selected in accordance with Subsection C shall serve unless for good cause shown may be excused. To show good cause for relief from serving, the panelist shall present an affidavit to a judge of the appropriate district court, which shall set out the facts showing that service would constitute an unreasonable burden or undue hardship. The court may excuse the proposed panelist from serving, and in such event a replacement panelist shall be selected within fifteen days in the same manner as the excused panelist.
"(5) If there is only one party defendant, other than a hospital, all panelists except the attorney shall be from the same class and a speciality of practice of health care provider as the defendant. If there are claims against multiple defendants, one *274 or more of whom are health care providers other than a hospital or physician, the panelists selected in accordance with this Subsection may also be selected from health care providers who are from the same class and specialty of practice of health care providers as are any of the defendants other than a hospital.
* * * * * *
"(8) The party aggrieved by the alleged failure or refusal of another to perform according to the provisions of this Section may petition any district court of proper venue over the parties for an order directing that the parties comply with the medical review panel provisions of the medical malpractice act."
Subparagraph (8), quoted above, was added to R.S. 40:1299.47(C) by Act 299 of 1979, which did not become effective until after the plaintiff in the present case had filed on May 23, 1979 her objection to naming Dr. Schlosser as a member of a panel. Nevertheless, the 1979 amendment is procedural and thus retroactive. If express statutory provision was needed for plaintiff's May 23, 1979 motion, the procedure is now clearly provided by the statute.
We cannot agree with plaintiff's contention that LSA-R.S. 40:1299.47(C)(1) requires that all physician members of the medical review panel practice in the same community or locality as the defendant physician. As we read subparagraph (1), in the context of the other subparagraphs quoted above, it is part of the legislative scheme to insure that competent and impartial physicians who practice in the same community or locality as the defendant shall be required to serve on the panel if selected by one of the parties. However, subparagraph (1) is not intended to restrict panel members to physicians practicing in the same community or locality. If either of the parties desires, he may select a physician who does not practice in the same community or locality as the defendant, provided the physician has the other required qualifications and is willing to serve voluntarily.
We are guided to this construction of the statute by the rule that courts must seek to ascertain the legislative intent, in light of the statute as a whole, so that the entire statute may be construed in harmony with its objectives and purposes. Board of Trustees of East Baton Rouge v. All Taxpayers, 336 So.2d 305 (1st Cir. 1976).
In Everett v. Goldman, supra, our Supreme Court described as follows the general legislative intent and purpose of the medical review panels:
"A second advantage to a health care provider who has qualified under the act is that his patient must provoke a medical review panel and receive an opinion from it before he can file suit in a court of law. R.S. 40:1299.47. Although this requirement can be waived by the agreement of both parties, it is assumed that most malpractice cases against health care providers will be filtered through such a panel.
* * * * * *
"The sole duty of the panel is to express its expert opinion(s).
* * * * * *
"The findings of the medical review panel are not binding on the litigants.
* * * * * *
"Pretrial screening through a medical review panel is designed to weed out frivolous claims without the delay or expense of a court trial. It is thought that the use of such panels will encourage settlement because both parties will be given a preliminary view of the merits of the case. 1975 Duke L.J. 1417, 1456-63. If a claim is found by the panel to be without merit it is thought that the claimant will be likely to abandon his claim or agree to a nominal settlement. Martin H. Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications, 55 Tex.L.Rev. 757 (1977); 50 Tul.L.Rev. supra at 681; U. S. Depart. of Health, Education & Welfare, Pub. No. (OS)73-88, Medical Malpractice: Report of the Secretary-Commission on Medical Malpractice, p. 91 (1973). Moreover, a plaintiff who gains a favorable opinion *275 from the panel may be able to negotiate a favorable settlement with his defendants, a procedure which also avoids much of the time and expense of a trial. HEW Report, supra at 91: Mallor, A Cure for the Plaintiff's Ills? 51 Ind.L.J. 103, 106-07 (1975). See Anderson v. Florence, 288 Minn. 351, 181 N.W.2d 873 (1970). Thus, to the extent that the use of medical review panels encourages settlement of suits before trial, litigation costs will probably be reduced. Because out of court settlements usually do not garner the publicity of jury verdicts it is also hoped by proponents of the legislation that publicity concerning the award figure will be minimal and that this fact will gradually reduce awards granted by juries. Redish, supra at 767. Additionally since jury awards are believed generally to be larger than settlements, the increase in prevalence of the latter should serve to reduce the overall payment of claims. Thus, litigation costs and actual awards are expected to be lessened by virtue of the employment of pre-suit medical review panels."
It is obvious the legislature intended the medical review panel to play a major role in the entire scheme of the Medical Malpractice Act. The principal purpose of Section C is to provide a fair and equitable means of selecting panel members, and to ensure their availability to both plaintiff and defendant. The act should be construed liberally to accomplish this purpose.
The organization of Section C is important to an understanding of its provisions. The opening paragraph of Section C provides for the composition of the panel and ensures their qualification by requiring members hold an unlimited license to practice medicine in Louisiana, with the exception provided in Paragraph (5) discussed below. Then, the selection procedure is set out. Thereafter, there are eight paragraphs designed to aid and implement the selection process. Examination of these paragraphs as a whole reveals an overall concern with ensuring the availability and impartial behavior of panel members.
Subparagraph (1), which contains the language primarily at issue, provides a general rule: "All physicians engaged in the active practice of medicine in this state who practice in the same community or locality as does the health care provider against whom the claim is made, ... shall be available for selection." (Emphasis supplied) We do not view this general rule as a restriction on the selection process. Rather, the mandate conveyed by use of the word "shall" applies to "be available for selection." We find this mandate is directed at those physicians described and not at the parties making the selection. The purpose of the mandate is to ensure both plaintiff and defendant a readily available body of physicians from which to select a panel member.
Subparagraph (2) repeats the mandate of Subparagraph (1) more clearly: "Upon selection, said physician shall be required to serve." We note here the fact that both subparagraphs (2) and (3) emphasize each party's right to select a panel member. Subparagraph (3) also provides for a situation of multiple plaintiffs and defendants.
Subparagraph (4) emphasizes the strength of the mandate upon physicians by providing a physician may be excused from service only for good cause and only by a district judge.
Subparagraph (5), also at issue here, provides two exceptions to the general rule of Subparagraph (1). In a case where there is only one defendant other than a hospital, all panelists "shall" be of the defendant's class of specialty. The second exception must be read in connection with the opening paragraph of Section C and applies at the option of the parties when there are multiple defendants and one or more are not physicians or hospitals.
The balance of the subparagraphs are procedural in nature and need not concern us here except to note the general purpose of implementing the selection procedure.
As stated above, we conclude Section C does not require that physician panel members be selected from the same community or locality as the defendant, whether the defendant is a general practitioner or a *276 specialist. The purpose of the phrase "same community or locality" in Subparagraph (1) is to identify and ensure a readily available body of physicians who cannot refuse to serve upon selection. This interpretation is consistent with the advisory duties of the panel and the legislative intent to have most medical malpractice cases filter through such a panel at minimum costs.
Our construction of the statute is supported by Ardoin v. Hartford Accident & Indemnity Company, 360 So.2d 1331 (La. 1978), in which our Supreme Court abolished the "locality rule" insofar as it applies to medical specialists serving as expert witnesses. The decision in that case clearly indicates a trend away from a strict locality rule.
We conclude that plaintiff's May 23, 1979 motion, objecting to the selection of Dr. Schlosser as a member of the panel and urging that a pre-suit medical review panel cannot be selected in the present case, should have been denied.
For the reasons assigned, the judgment appealed is set aside and recast as follows: It is ordered, adjudged and decreed that the district court has jurisdiction over the subject matter, that defendants' exception to the venue be overruled, and that defendant's exception to subject matter jurisdiction is actually an exception of prematurity and is sustained, and plaintiff's suit is dismissed. All costs in the trial and appellate courts are assessed against the plaintiff.
AFFIRMED.