425 So.2d 1237 (1983)
Rena VINCENT
v.
Dr. Jerome J. ROMAGOSA, et al.
No. 82-CA-1231.
Supreme Court of Louisiana.
January 10, 1983.
*1238 Gerald J. Block, J. Minos Simon, Ltd., Simon, Corne & Block, Lafayette, for plaintiff-appellee.
Mark Judice, Robert Lecky, Voorhies & Labbe, Lafayette, for defendants-appellants.
MARCUS, Justice.
This is an appeal, pursuant to La. Const. art. 5, § 5(D), by Dr. Jerome D. Romagosa, his partnership, and the individual members thereof from a judgment of the district court declaring the Medical Malpractice Act unconstitutional because La.R.S. 40:1299.47, the provision for a pre-suit medical review panel, makes it "inherently impossible to convoke a medical review panel of impartial panelists." We disagree and reverse.
The history of these proceedings are somewhat involved. Initially, Rena Vincent instituted a medical malpractice action in the district court against defendants, all of whom are qualified health care providers under the Medical Malpractice Act, La.R.S. 40:1299.41 et seq. Plaintiff alleged in her petition that she was entitled to circumvent the statutory requirement that she first submit her complaint to a medical review panel (La.R.S. 40:1299.47 B) because her claim involved physicians engaged in radiotherapy and defendant doctors were the only radiologists in defendants' community or locality (Lafayette). The district judge sustained certain exceptions and dismissed plaintiff's suit. The court of appeal affirmed finding the suit premature. The court further held that La.R.S. 40:1299.47(C) did not require that physician panel members be selected from the same community or locality as defendants, "provided the physician has the other required qualifications and is willing to serve voluntarily." Vincent v. Romagosa, 390 So.2d 270 (La. App.3d Cir.1980), writ denied.[1]
In an attempt to select a panelist as required by La.R.S. 40:1299.47(C)(3), plaintiff's attorney sent a letter to all radiotherapists known to him throughout the state. The letter was the same in each case except for the name and address of the particular doctor. The letter stated that plaintiff had a malpractice claim against defendants, described the nature of her injuries, and requested a response as to his or her availability to serve as plaintiff's appointed panelist. The letter further provided that plaintiff was a pauper; therefore, all services would have to be rendered free of charge.[2] Of the thirty-six physicians contacted, sixteen responded. Considering that only three had "unconditionally" agreed to serve "voluntarily" and as to these three there was evidence that they had been in communication with and potentially influenced by defendants, plaintiff filed a motion for a protective order to prohibit defendants from interfering with her right to select an impartial panelist. Defendants, having already selected their own panelist, filed a motion to compel plaintiff to select her panelist as required by law. La.R.S. 40:1299.47(C)(3). After a hearing on both motions, an order was issued prohibiting *1239 defendants from communicating with other prospective panelists until plaintiff selected a panelist and giving plaintiff thirty days in which to do so. Plaintiff indicated to the court that she would not be able to select a panelist because she intended to attack the constitutionality of the Medical Malpractice Act on the ground that it was impossible to obtain an impartial medical review panel.
Thereafter, plaintiff filed a rule to show cause why she should not be declared to be without an "effective, meaningful and constitutional administrative" hearing and why the Medical Malpractice Act should not be declared unconstitutional to the extent that a review panel is compelled. Plaintiff also prayed that the panelist selected by defendants be declared unqualified to serve. Plaintiff was granted subpoenas to compel the appearance of nineteen physicians at the hearing, nine to appear on the first day. Efforts by the Louisiana Medical Society to quash the subpoenas were unsuccessful.
At the conclusion of the hearings, the district judge declared the Medical Malpractice Act unconstitutional because it was "inherently impossible to convoke a medical review panel of impartial panelists." His reasons for this conclusion were that (1) all potential panelists have a direct and substantial pecuniary interest in reducing medical malpractice claims, and (2) the ad hoc structure of the panel creates a potential for reversal of roles between panelists and defendant health care providers and thereby deprives panelists of that degree of detachment, neutrality and aloofness necessary to render an impartial opinion.
The effect of the district court's judgment was to declare the Medical Malpractice Act in its entirety unconstitutional because La.R.S. 40:1299.47 (provision for pre-suit medical review panel) was unconstitutional on its face. Having done this, the court did not reach the issue of its constitutionality as applied in this case. It did, however, make a finding of fact that there were two or three available and willing physicians from whom plaintiff could choose her panelist.
First, we will address the constitutionality of La.R.S. 40:1299.47 on its face. In Everett v. Goldman, 359 So.2d 1256 (La. 1978), the constitutionality of the statutory requirement that plaintiff first submit her complaint to a medical review panel before commencing action in court was before us. After a thorough analysis of its impact on plaintiff's equal protection and due process rights, we found the provision constitutional. See also DeRouen v. Kolb, 397 So.2d 791 (La.1981); Seoane v. Ortho-Pharmaceuticals, Inc., 660 F.2d 146 (5th Cir.1981). In the instant case, we are simply presented with a different argument as to why the medical review panel is unconstitutional, that is, that it is impossible to obtain an impartial panel because of the "pecuniary interests" of potential panelists in reducing medical malpractice claims and their possible bias resulting from potential reversal of roles between panelists and defendant. We find no merit to this contention. To hold otherwise would amount to a blanket indictment against the entire medical profession. Possible reduction in medical malpractice claims is too remote to constitute a "pecuniary interest." Likewise, potential reversal of roles between panelists and defendant is too speculative to be of any consequence. Additionally, the role of the physician panel members is not analogous to that of the judiciary. DeRouen, supra. The sole duty of the panel is to render an "expert opinion as to whether or not the [medical] evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint." La.R.S. 40:1299.47(G). Each panelist takes an oath that he will render an opinion "without partiality or favoritism of any kind." La. R.S. 40:1299.47(C)(5). Irrespective of the panel's opinion, a plaintiff may still sue in a court of law. Everett, supra. The panel's report is admissible as evidence, but it "shall not be conclusive." La.R.S. 40:1299.47(H). Either party may question the panel before issuance of their report as to "any matters relevant to issues to be decided by the panel," and, at trial, either party has the right to call any member of the panel as *1240 a witness. La.R.S. 40:1299.47(E) and (H). Given these procedural safeguards, any aura of credibility that the panel's expert opinion may have beyond that of an expert witness does not detract from the plaintiff's due process rights. Hence, we consider the trial judge erred in holding the Medical Malpractice Act unconstitutional because the composition of the medical review panel made it impossible to obtain an impartial panel.
Next, we consider the issue of whether the medical review panel provision is unconstitutional as applied in this case, that is, whether plaintiff can obtain a fair trial by an impartial medical review panel.
The record reflects that none of the fifteen physicians who testified at the hearing formed an opinion on the validity of plaintiff's malpractice claim upon receipt of the letter from her attorney. All considered that further medical information was needed. A few contacted defendants for more information. They did so merely out of curiosity stemming from a desire to avoid problems in their own practice. The record shows that defendants did not provide anyone with medical information beyond that contained in the letter.
Almost all the radiotherapists contacted by plaintiff's attorney were curious about why plaintiff was seeking a panelist from so far away, sometimes up to 200 miles, and why he had sent what appeared to be a form letter to every radiotherapist in the state, rather than contacting them personally by telephone which their past experience with legal cases had indicated was the accepted mode of obtaining an expert witness. Among immediate associates, there was generally some discussion on who, if anyone, could be freed to serve as a panelist for plaintiff. In many cases, distance and personal factors detracted from a willingness to serve. However, two physicians indicated a willingness to serve if the panel were convened in their own locality; three testified that they had contacted plaintiff's attorney to say they would serve if needed but had been told they were not; and another, who had previously served on a panel and found in favor of the claimant, testified that he would be glad to serve although his hospital generally required remuneration. At least one other physician was glad to serve and would have responded so initially if plaintiff's attorney had only telephoned him. Three more had unconditionally volunteered to serve in the first place.
In sum, we find that the evidence amply supports the availability of a number of willing radiotherapists from whom plaintiff could choose a panelist even though the panel would not be convened in their own locality. We consider this number exceeds the two or three found by the trial judge. While the physicians almost unanimously were disturbed at being subpoenaed away from their practice in numbers without prior notice or information concerning the nature of the hearing, generally, they were all conscious of their obligation and duty to serve as a member of a medical review panel. Clearly, plaintiff can obtain an impartial panel from available radiotherapists. Hence, we do not consider that the medical review panel provision of the Medical Malpractice Act is unconstitutional as applied to plaintiff in this case. See DeRouen, supra.

DECREE
For the reasons assigned, the judgment of the district court is reversed. Plaintiff's rule to show cause is dismissed.
LEMMON, J., concurs.
CALOGERO, J., concurs and assigns reasons.
WATSON, J., dissents.
CALOGERO, Justice, concurring.
I concur in the majority's finding constitutional the requirement that the plaintiff submit her complaint to a medical review panel before seeking redress in the courts (La.R.S. 40:1299.47(B)). This same provision was challenged along with three others of the Medical Malpractice Act of 1975 and found to be constitutional in Everett v. Goldman, 359 So.2d 1256 (La.1978). However, *1241 I cannot subscribe to the unsupported conclusions of the majority to the following effect: "[t]o hold otherwise would amount to a blanket indictment against the entire medical profession. Possible reduction in medical malpractice claims is too remote to constitute a `pecuniary interest.' Likewise, potential reversal of roles between panelists and defendant is too speculative to be of any consequence."
The constitutionality of the provision rests on its being a reasonable legislative response to a purported impending medical malpractice crisis in this state brought on by the inability of doctors and others to secure medical malpractice insurance at all or to gain medical malpractice insurance at tolerable rates. La.R.S. 40:1299.47(B) bears a real and substantial relationship to the preservation and promotion of the public welfare.
Screening by the medical review panel composed of three physicians (one selected by plaintiff, one selected by the defendant, one selected by the other two) and one non-voting lawyer, has no far reaching or especially adverse effect upon the malpractice victim's or the health care provider's rights. If the panel determines the claim is substantial, the claimant obviously is benefited. If the panel determines the claim is groundless, the claimant is informed of the opinions of the medical expert panelists. If he disagrees with their analysis, he may still sue for a vindication of his rights in a court of law. In all cases which go to trial the judge or jury remains the final arbiter of factual questions concerning liability and quantum.
NOTES
[1] Whereas, a panelist selected from within defendants' community or locality is "required" to serve, La.R.S. 40:1299.47(C)(3)(b), except as provided in La.R.S. 40:1299.47(C)(3)(d).
[2] This statement is not completely accurate. See La.R.S. 40:1299.47(I).