**Doncene SOSA, Plaintiff and Appellee,**

v.

**Lonnie E. PAULOS, M.D., Defendant and Appellant.**

No. 940590.

Supreme Court of Utah.

Sept. 20, 1996.

---

James R. Hasenyager, Ogden, for plaintiff and appellee.

Elliott J. Williams, Salt Lake City, for defendant and appellant.

DURHAM, Justice:

Plaintiff Doncene Sosa signed a document entitled "Physician-patient Arbitration Agreement" shortly before undergoing knee surgery performed by defendant Lonnie Paulos, an orthopedic surgeon. After she filed a civil suit for medical malpractice related to the surgery, Dr. Paulos moved to stay the proceedings and compel arbitration under the agreement. The trial court denied the motion on the ground that the agreement was procedurally and substantively unconscionable. Dr. Paulos appeals.

 This case is extremely close on its facts. We emphasize preliminarily that arbitration agreements are favored in Utah and that no public policy requires such agreements to be subjected to a different analysis when they are between physicians and patients. They are enforceable if they meet the standards applicable to all contracts. Indeed, the Utah Arbitration Act so provides:

A written agreement to submit any existing or future controversy to arbitration is valid, enforceable, and irrevocable, except upon grounds existing at law or equity to set aside the agreement. . . .

Utah Code Ann. § 78–31a–3 (1992). Of course, under Utah law, an unconscionable agreement is not enforceable. *Bekins Bar V Ranch v. Huth*, 664 P.2d 455, 459–62 (Utah 1983).

The relevant facts are as follows: On November 6, 1991, Dr. Paulos performed a posterior cruciate ligament reconstruction on Ms. Sosa's left knee. According to the record, less than one hour prior to the surgery, after Ms. Sosa was undressed and in her surgical clothing, "someone from Dr. Paulos' office" gave her three documents and asked her to sign them. They were a "Patient Informed Consent and Release of Claims," a "Consent for Use of Freeze Dried or Flesh Donor Tissue," and the arbitration agreement in question here. Ms. Sosa stated in her affidavit that she signed all three documents without reading them. She specifically recalled that neither Dr. Paulos nor any member of his staff discussed the arbitration agreement with her at any time, either when she signed it or during any of her prior office visits. Immediately upon awaking from the anesthesia, Ms. Sosa became aware of a surgical complication. On July 15, 1994, Ms. Sosa filed a complaint for medical malpractice.

The arbitration agreement that Ms. Sosa signed discusses the following subjects:

1. Article 1, entitled "Agreement to Arbitrate," provides that disputes "as to medical malpractice . . . will be determined by submission to arbitration." Article 1 also states that both parties waive their constitutional right to a jury trial.

2. Article 2, entitled "All Claims Must Be Arbitrated," provides that all conceivable claims between the parties are subject to arbitration.

3. Article 3, entitled "Procedure and Applicable Law," establishes the manner in which the arbitration panel is selected and

also contains a cost-shifting provision. First, the contract provides that each party may choose one arbitrator, both of whom will pick the third arbitrator. Second, the contract requires, "Each arbitrator shall be a board-certified orthopedic surgeon." Third,

> if the arbitrators award patient less than one-half (½) of the amount sought by patient in arbitration, then the patient shall be responsible for ... payment of all expenses, costs, arbitrators' fees, and reasonable attorneys' fees incurred by physician in connection with the arbitration, including payment to physician at the rate of $150.00 per hour for time spent by physician defending himself in connection with the arbitration.

4. Article 4, entitled "General Provisions," generally states that Utah's statute of limitations applies to its arbitration proceedings.

5. Article 5, entitled "Revocation," allows the agreement to be revoked "by written notice delivered to the physician or mailed ... within 14 days after signature."

6. Article 6, entitled "Read and Understood," is a declaration that the patient has read and understands the agreement and that the "[p]hysician or his assistant has explained the above agreement to me and to my satisfaction and I do not have any unanswered questions." It also states that the patient "has executed this agreement of [her] own free will and not under any duress."

7. Article 7, entitled "Received Copy," declares that the patient has received a copy of the agreement.

8. The final two clauses of the agreement provide as follows:

> If any provision of this Arbitration Agreement is held invalid or unenforceable, the remaining provisions shall remain in full force and shall not be affected by the invalidity of the other provisions.
>
> **NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.**

Ms. Sosa argues that the facts surrounding her signing of the agreement, together with the substance of the agreement itself, demonstrate that it was procedurally and substantively unconscionable, as the trial court determined, and therefore unenforceable. Dr. Paulos, on the other hand, argues that the agreement is fair and even-handed and that Ms. Sosa had plenty of time to read the agreement and ask questions concerning its content. Because arbitration agreements are favored in Utah, Dr. Paulos argues, the trial court improperly failed to compel arbitration pursuant to the parties' agreement.

■■■ A trial court's denial of a motion to compel arbitration presents a question of law which we review for correctness. *See Docutel Olivetti Corp. v. Dick Brady Sys., Inc.,* 731 P.2d 475, 479 (Utah 1986) (review of trial court's interpretation that contract did not require arbitration presents question of law). The determination of whether a contract is unconscionable is also a question of law for the court. *See Resource Management Co. v. Weston Ranch,* 706 P.2d 1028, 1041 (Utah 1985); *see also Maxwell v. Fidelity Fin. Servs., Inc.,* 184 Ariz. 82, 907 P.2d 51, 56 (1995) ("[T]he law in every other jurisdiction that has ruled on this issue, clearly provides that the determination of unconscionability is to be made by the court as a matter of law.").

Close examination of the standard this court articulated in *Resource Management* reveals our acknowledgment that "unconscionable is a term that defies precise definition." 706 P.2d at 1041. To simplify the analysis, a majority of courts divide unconscionability doctrine into two branches: procedural unconscionability, which focuses on the formation of the agreement, and substantive unconscionability, which focuses on the agreement's contents. *Maxwell,* 907 P.2d at 57. In adopting this division, we stated in *Resource Management* that unconscionability includes " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " 706 P.2d at 1043 (quoting *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449

(D.C.Cir.1965)). While this suggests that a party must show elements of both procedural and substantive unconscionability to establish a claim, we went on to state the following:

> Gross disparity in terms, absent evidence of procedural unconscionability, can support a finding of unconscionability. While it is conceivable that a contract might be unconscionable on the theory of [procedural unconscionability] without any substantive imbalance in the obligations of the parties to the contract, that would be rare.

*Id.* (citations omitted).[1]

In the instant case, the trial court found that the arbitration agreement was both substantively and procedurally unconscionable. We examine the two branches of the doctrine separately.

### Substantive Unconscionability

The trial court pointed to two provisions in the agreement which it said rendered the agreement substantively unconscionable: (1) the requirement that all arbitrators be orthopedic surgeons, and (2) the clause requiring the patient to pay the doctor's arbitration fees (personal as well as for attorneys and costs) if the arbitration award is not more than half of the amount claimed.

On appeal, Dr. Paulos responds that the agreement clearly specifies that each party is giving up the right to a jury trial of potential claims and that there is no unfairness in requiring a panel of neutrally selected experts in orthopedic medicine to conduct the arbitration. It appears from comments in the brief and at oral argument that Dr. Paulos' counsel does not now defend the fairness of the provisions requiring payment of costs by a patient who wins less than half of the amount sought in arbitration. Instead, Dr. Paulos posits that the trial court should merely have severed the offensive provision pursuant to the severance clause in the agreement and upheld the remainder of the contract.

The arguments for and against substantive unconscionability focus on the contents of the agreement, examining the "relative fairness of the obligations assumed." *Resource Management,* 706 P.2d at 1041. When determining whether a contract is substantively unconscionable, we have considered whether its " 'terms [are] so one-sided as to oppress or unfairly surprise an innocent party' " or whether there exists " 'an overall imbalance in the obligations and rights imposed by the bargain.' " *Id.* (quoting *Bekins Bar V Ranch,* 664 P.2d at 462). The terms of the contract should be considered " 'according to the mores and business practices of the time and place.' " *Id.* at 1042 (quoting 1 *Corbin on Contracts* § 128, at 551 (1963)).

Applying this standard, we are unpersuaded that the requirement that the arbitration panel consist of neutrally selected orthopedic surgeons rises to the level of substantive unconscionability. Other courts addressing this issue have not identified evidence suggesting that neutrally selected medical professionals will be biased in favor of malpractice defendants. *See, e.g., Vincent v. Romagosa,* 425 So.2d 1237, 1239 (La.1983) (finding no merit to argument that physicians on medical review panels will be impartial or biased in favor of colleagues); *Linder v. Smith,* 193 Mont. 20, 629 P.2d 1187, 1192 (1981) (same); *Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434, 446 (1978) (same). These courts have further held that any perceived pecuniary interest a physician arbitrator may have in the outcome of a medical malpractice case is too tenuous to affect his or her neutrality. *Vincent,* 425 So.2d at 1239; *Strykowski,* 261 N.W.2d at 446.

In this case, Ms. Sosa has not presented any evidence of likely bias—only assertion, which we do not find convincing. Ms. Sosa does cite one case supporting her position that the physician/arbitration requirement is substantively unconscionable. In *Broemmer v. Abortion Services of Phoenix,* 173 Ariz. 148, 840 P.2d 1013, 1017 (1992), the Arizona

---

1. Courts are split on the issue of whether a party must show both procedural and substantive unconscionability to establish a claim. Those that require both take a balancing approach, requiring a greater showing of one if the evidence of the other is weak. *See Maxwell v. Fidelity Fin. Servs., Inc.,* 184 Ariz. 82, 907 P.2d 51, 58 (1995) (discussing case law from various jurisdictions).

Supreme Court held that an arbitration agreement between a patient and a medical clinic was an adhesion contract and invalidated the agreement under the doctrine of reasonable expectations.[2] In so doing, the court noted that one of the agreement's terms, which required arbitrators to be licensed medical doctors, was "potentially advantageous" to the clinic and that it would be "unreasonable" to enforce the unnegotiated term against the plaintiff. *Id.* at 1016–17. While this case is somewhat analogous, a conclusion that a term is "potentially advantageous" to one side or "unreasonable" is insufficient, standing alone, to support a determination of substantive unconscionability. As noted, a showing of substantive unconscionability requires evidence that a term is "so one-sided as to oppress or unfairly surprise an innocent party." *Bekins Bar V Ranch,* 664 P.2d at 462. We hold that Ms. Sosa has failed to show that the term requiring that the panel be comprised of neutrally selected orthopedic surgeons meets this standard.

■ As stated earlier, counsel for Dr. Paulos indicated at oral argument that defendant does not now argue for the fairness of the provision requiring payment of costs by a patient who wins less than half the amount of damages sought in arbitration. We hold, as did the trial court, that this provision is substantively unconscionable on its face. Under this term, a patient must pay Dr. Paulos' attorney fees and costs and must also pay Dr. Paulos $150 an hour for any time he spends on the case, even in situations where Dr. Paulos is determined to have committed malpractice. We find no precedent in law for the award of attorney fees to the loser in malpractice arbitration, and we hold that such a contractual term embedded in a non-negotiated agreement is not only substantively unconscionable but against public policy.

### Procedural Unconscionability

■ Procedural unconscionability focuses on the manner in which the contract was negotiated and the circumstances of the par-

ties. *Resource Management,* 706 P.2d at 1042. Factors bearing on procedural unconscionability include (1) whether each party had a reasonable opportunity to understand the terms and conditions of the agreement, *id.; see also Maxwell,* 907 P.2d at 58 (asking whether contracting parties had real and voluntary meeting of minds); (2) whether there was a lack of opportunity for meaningful negotiation, *Bekins Bar V Ranch,* 664 P.2d at 462; (3) whether the agreement was printed on a duplicate or boilerplate form drafted solely by the party in the strongest bargaining position, *id.;* (4) whether the terms of the agreement were explained to the weaker party, *Maxwell,* 907 P.2d at 58; (5) whether the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the agreement, *Resource Management,* 706 P.2d at 1042; and (6) whether the stronger party employed deceptive practices to obscure key contractual provisions. *Id.*

Ms. Sosa's arguments in support of her claim of procedural unconscionability include the fact that she was not presented with the arbitration agreement until less than an hour prior to surgery when she was already in her surgical clothing and therefore in an apprehensive and nervous condition. She points out that no one undertook to explain the document to her and that she felt "rushed and hurried" by the manner of its presentation. Finally, she argues that although she could theoretically have refused to sign the agreement, she believed signing was necessary to proceed with the surgery and she could not realistically contemplate postponement or cancellation at that late stage. Dr. Paulos replies that no one told Ms. Sosa that she had to sign the document to receive his services, and that she would have been allowed all the time she needed to read and discuss the document if she had asked.

■ Upon reviewing the record in this case, we agree with the trial court's conclusion that elements of procedural unconscionability surrounded the negotiation of this

---

2. In *Allen v. Prudential Property & Casualty Insurance Co.,* 839 P.2d 798, 807 (Utah 1992), we rejected the doctrine of reasonable expectations, which states that where an adhesion contract is found, provisions of the contract that do not fall within the reasonable expectations of the adhering party will be invalidated. We stated that the doctrine of unconscionability would be a promising alternative to the doctrine of reasonable expectations. *Id.* at 805–06.

agreement. According to her uncontradicted affidavit,[3] Ms. Sosa was not given a copy of the arbitration agreement until "minutes away" from surgery when she was already in her surgical clothing and in a state of fear and anxiety. She stated that she felt "rushed and hurried" to sign the documents and thus did not read them. The agreement was on a printed form and was drafted by Dr. Paulos, who was in a much stronger bargaining position considering the timing of the delivery of the agreement to Ms. Sosa. Neither Dr. Paulos nor any member of his staff discussed the arbitration agreement with Ms. Sosa at that time or at any other time prior to surgery. No one explained to her the options of not signing and discussing the matter further with Dr. Paulos.

Under these circumstances, we cannot conclude that the arbitration agreement was negotiated in a fair manner and that the parties had a real and voluntary meeting of the minds. Nor can we conclude that Ms. Sosa had a meaningful choice with respect to signing the agreement. Dr. Paulos could have asked Ms. Sosa to sign the agreement during one of her office visits, or at the very least, he could have explained the document to her on the day of surgery. This would have provided Ms. Sosa a somewhat reasonable opportunity to understand the terms and conditions of the agreement. Instead, he waited until "minutes away" from the surgery and had the document presented to Ms. Sosa by a staff person without any explanation. At this time, she was dressed in her surgical clothing, was quite nervous about the surgery, and felt rushed and hurried. In short, Ms. Sosa was in a vulnerable position when she was shown the document for the first time and asked to sign it.

█ Despite the timing of the agreement's presentation, Dr. Paulos argues that Ms. Sosa still should have read the agreement before signing it and points out that he was available to answer any questions she might have had. While it is generally true that a party has a duty to read and understand the terms of a contract before signing it, *Hottinger v. Jensen,* 684 P.2d 1271, 1274 (Utah 1984), that duty is obviated when the party's failure to read the agreement results from the procedurally unconscionable behavior of the party in the stronger bargaining position. Moreover, even if Ms. Sosa had read the agreement, she most likely would have felt that she had no meaningful choice but to sign it. She was already at the hospital and in a vulnerable position, with several people waiting to participate in her surgery. Backing out of surgery at that juncture would be difficult for the average person experiencing the apprehension and anxiety common to the circumstances. Extraordinary assertiveness on Ms. Sosa's part was not required, since it was the procedure controlled by Dr. Paulos that made her vulnerable.

█ Next, Dr. Paulos contends that despite any procedural unconscionability in the formation of the agreement and the presence of a conceded substantively unconscionable term in the agreement itself, his inclusion of a severance clause at the end of the document "saves" the agreement. The clause states:

> If any provision of this Arbitration Agreement is held invalid or unenforceable, the remaining provisions shall remain in full force and shall not be affected by the invalidity of any other provision.

He argues that we should merely sever the offending provision and uphold the remainder of the agreement.

█ In Utah, contract provisions are severable if the parties intended severance at the time they entered into the contract and if the primary purpose of the contract could still be accomplished following severance. *See Management Servs. Corp. v. Development Assocs.,* 617 P.2d 406, 408 (Utah 1980).

---

**3.** Dr. Paulos did not submit any sworn testimony to the trial court, nor did he submit any other evidence apart from the arbitration agreement. The trial court noted:

> Defendant's Reply Memorandum in Support of his Motion to Stay and Compel Arbitration does not dispute the statement of facts contained in plaintiff's Memorandum in Opposition to defendant's Motion to Stay and Compel Arbitration. Moreover, defendant has filed no contra-affidavit to that of plaintiff's supporting affidavit. The Court will accept the statements contained therein as true.

Dr. Paulos argues that the agreement provides on its face for the severability of invalid or unenforceable provisions and that severance of the unconscionable term would not interfere with the primary purpose of the agreement—the arbitration of medical malpractice disputes.

Were we to adopt Dr. Paulos' argument in this case, the doctrine of procedural unconscionability would be effectively destroyed. Under his theory, any party in a stronger bargaining position would have an incentive to engage in procedurally unconscionable behavior to induce a weaker party to sign an agreement containing extremely unfavorable terms. So long as the stronger party includes a severance clause, it will always reap the full benefit of its overreaching agreement unless the weaker party files a lawsuit successfully challenging the agreement's terms under the exacting doctrine of substantive unconscionability. Furthermore, even if a court finds certain terms *substantively* unconscionable, these terms can be severed and the stronger party will still get the benefit of its unbargained-for agreement. In other words, a severance clause enforced in this fashion would encourage procedural and substantive overreaching because the stronger party will have nothing to lose by trying to intimidate.

We note that in some settings the rationale behind severing invalid provisions as opposed to voiding entire agreements is quite valid; it allows parties the basic benefit of their bargained-for agreement. Here, however, the severance provision, like the rest of the agreement, was not negotiated or bargained for. Thus, instead of allowing the parties the benefit of their agreement, enforcing the unbargained-for severance clause would allow Dr. Paulos the benefit of his procedurally unconscionable behavior.

 Finally, Dr. Paulos argues that even if there were elements of procedural unconscionability in the negotiation of the agreement, the agreement's revocation clause—which gave Ms. Sosa fourteen days to unilaterally review and revoke the agreement—"cures" any taint of unconscionability. A majority of the court believes that this argument would be persuasive under certain factual circumstances not addressed in the current record. Specifically, on the record before us it is ambiguous as to whether Ms. Sosa actually received a signed copy of the arbitration agreement following her surgery. If on remand the trial court determines that she did and there is no indication that she was precluded from exercising her right to revoke the agreement within the fourteen-day period, the majority would direct the trial court to sever the third clause of article 3 and enforce the remainder of the agreement. If, however, the trial court determines that Ms. Sosa did not receive a signed copy of the agreement or did receive a copy but was somehow precluded from revoking it within the fourteen-day period, the majority would direct the trial court to hold the entire agreement unconscionable.

The majority's rationale for this position is simple: Assuming that Ms. Sosa received a copy of the agreement and considering the fact that she was aware of surgical complications immediately upon awakening from surgery, fourteen days was sufficient time for her to read and understand the agreement's unconditional revocation clause. During this fourteen-day period, she would not have been forced to make a decision in a hurried, rushed, or anxious state, and her decision to revoke or not would have been a meaningful choice.

This author, however, disagrees with this rationale and would hold the entire agreement unconscionable on the facts presently before the court. The uncontroverted evidence is that (1) Ms. Sosa did not read the arbitration agreement; (2) she could not recall ever signing an arbitration agreement; and (3) neither Dr. Paulos nor any member of his staff ever discussed the agreement with Ms. Sosa. In short, because of Dr. Paulos' procedurally unconscionable behavior, Ms. Sosa was unaware of the presence of an arbitration agreement when she awoke from surgery.

In sum, we unanimously agree with the trial court's conclusion that Dr. Paulos' behavior in negotiating the agreement was procedurally unconscionable and that the third clause of article 3 is substantively unconscio-

nable. In accordance with the majority's view on the revocation clause, the case is remanded to the trial court for a determination of (1) whether Ms. Sosa was given a signed copy of the arbitration agreement following her surgery, and (2) whether she was somehow precluded from exercising her right to revoke the agreement within the fourteen-day period. If the trial court determines that she received a copy and was not precluded from revoking the agreement, it should sever the third clause of article 3 and enforce the remainder of the agreement. If the trial court determines that she did not receive a copy of the agreement or was precluded from exercising her right to revoke, the trial court's original determination that the entire agreement is unconscionable is affirmed.[4]

STEWART, Associate C.J., concurs in Justice DURHAM's opinion.

ZIMMERMAN, Chief Justice, writing separately:

I write to explain, on behalf of a majority of the court, why this matter is being remanded.

On the record before us, it appears that Ms. Sosa received a copy of the arbitration agreement which clearly spelled out that she had fourteen days to revoke the agreement. The clause attached no conditions to her revocation. In other words, she could revoke for any reason or for no reason. If she did receive a copy of the agreement, as the signed agreement acknowledges, and was aware of a surgical complication immediately upon awakening from the anesthesia, any procedural unfairness in the initial signing of the agreement was subsequently cured. Un-

der these facts, Ms. Sosa would have had fourteen days after becoming aware of her injury to revoke the arbitration agreement, during which time she would not have been forced to make a decision in a hurried, rushed, or anxious state. Because she knew that the surgery had not gone well, her decision to revoke or not would have been a meaningful choice.

Case law from other jurisdictions suggests that such revocation clauses work to cure the procedural irregularities that arise when medical forms are presented to patients shortly before surgery. *See Morris v. Metriyakool,* 418 Mich. 423, 344 N.W.2d 736, 742 (Mich.1984). Moreover, under the facts of this case, it is not clear that the fourteen-day revocation period was insufficient as a matter of law to cure the procedural irregularities surrounding the signing of the agreement. *Cf.* Utah Code Ann. § 70C–5–102 (affording consumers three days in which to cancel door-to-door sales agreements).

As a result, unlike Justice Durham, we cannot say, on the record before us, that the whole transaction was tainted with procedural unconscionability so as to render the entire agreement null and void. If, after remand, the trial court determines that Ms. Sosa knew she had been injured, that she had received a copy of the agreement which contained an easily understandable clause affording her fourteen days to revoke, and that there is no basis for finding that she was precluded from exercising that right within the fourteen-day period, the agreement to arbitrate should be enforced. However, if she did not know she had been injured, did not receive a copy of the agreement, or was otherwise precluded from exercising her

---

4. Courts finding contracts unconscionable have employed three distinct remedies taken, for the most part, from section 2–302(1) of the Uniform Commercial Code:

 (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. *See Resource Management,* 706 P.2d at 1041 (stating that many courts have applied U.C.C.

 approach on unconscionability to cases not strictly governed by U.C.C.). This section has been interpreted as giving courts great flexibility in granting remedies. *See* John D. Calamari & Joseph M. Perillo, *Contracts* § 9–39, at 405 (3d ed. 1987). Accordingly, we hold that if the trial court's original decision is affirmed and the agreement is ruled unconscionable, the proper remedy is to invalidate the entire agreement. *Doing so accounts fully for Dr. Paulos' procedurally unconscionable behavior during the formation of the agreement and his inclusion of substantively unconscionable terms in the agreement itself.*

right to withdraw from the agreement within fourteen days, then we would agree that Ms. Sosa should have her day in court.

HOWE and RUSSON, JJ., concur in Chief Justice ZIMMERMAN's opinion.