2001 UT 31

**Gerald McCOY, individually and as personal representative of the Estate of Frieda McCoy, Plaintiff and Respondent,**

v.

**BLUE CROSS AND BLUE SHIELD OF UTAH, a Utah Corporation, Defendant and Petitioner.**

**No. 990692.**

Supreme Court of Utah.

March 30, 2001.

---

David R. Olsen, Paul M. Simmons, Jeffrey D. Eisenberg, Salt Lake City, for plaintiff.

Timothy C. Houpt, Andrew H. Stone, Marci Batty, Salt Lake City, for defendant.

ON CERTIORARI TO THE UTAH
COURT OF APPEALS

DURRANT, Justice:

¶ 1 Blue Cross and Blue Shield of Utah (hereinafter "Blue Cross") petitions this court to reverse the court of appeals' decision affirming the trial court's denial of Blue Cross's motion to compel arbitration. Blue Cross mailed amendments that included a mandatory arbitration provision to its health insurance policyholders. Gerald McCoy, a Blue Cross policyholder, requested payment for alternative treatments for his wife's cancer. Blue Cross denied payment, and McCoy filed suit in district court. Blue Cross moved to compel arbitration. McCoy asserted Blue Cross had not preserved evidence that it notified him of the arbitration

amendment. The trial court agreed and denied Blue Cross's motion to compel arbitration. The court of appeals affirmed, and Blue Cross petitioned for certiorari, which we granted. *See* 994 P.2d 1271 (Utah 1999). We affirm.

## BACKGROUND

¶ 2 McCoy purchased a family health insurance policy from Blue Cross in October 1985. Blue Cross reserved "the absolute right to modify or amend [the policy] from time to time." The policy also stated that "any notice . . . shall be deemed to have been given to and received by the subscriber when deposited in the United States Mail with first class postage prepaid and addressed to the subscriber at the address shown in the records of the policy."

¶ 3 When McCoy purchased the policy from Blue Cross it did not contain an arbitration provision. Blue Cross amended its policies to add an arbitration clause effective January 1, 1986. Blue Cross prepared a magnetic tape containing the names and addresses of over 30,000 affected policyholders who were to receive a copy of the policy amendment notification that contained the arbitration provision. The magnetic tape was sent to a printing company, which printed a cover letter to be mailed along with the arbitration notification. These were then forwarded to a mailing service with instructions to insert the materials into envelopes and deliver the mailings to the post office. Blue Cross did not retain a copy of the magnetic tape, nor did it obtain a verification list of affected policyholders from either the printer or the mailing service. McCoy denies ever having received an actual notice of the binding arbitration amendment.

¶ 4 McCoy's wife, Frieda, was diagnosed with breast cancer in March 1994. Chemotherapy proved ineffective, and McCoy requested that Blue Cross pre-authorize payment for an alternative cancer treatment. Blue Cross denied the request. It also denied McCoy's subsequent administrative appeal in January 1995. In the same letter notifying McCoy of the denial of his appeal, Blue Cross informed him that if he remained "dissatisfied with this decision, [he had] the right to seek binding arbitration of the dispute pursuant to the Rules of the American Arbitration Association. The Customer Service Department can assist you with information about how to initiate and participate in arbitration."

¶ 5 McCoy's wife died as result of her cancer, and McCoy brought suit against Blue Cross in district court in January 1997. His claims advanced various theories for recovery against Blue Cross based on its refusal to provide coverage for treatment of his wife's cancer. In response to McCoy's suit, Blue Cross filed a motion to compel arbitration.

¶ 6 Blue Cross submitted several affidavits containing the statements of various Blue Cross employees detailing their actions between 1985 and 1990, during which time they mailed three separate notices of the amendment to the policy, purportedly to all policyholders. Blue Cross also argued that because McCoy conceded that he had received the letter denying his appeal and informing him that he had a right to arbitration, he had waived his right to contest the arbitration amendment itself.

¶ 7 The trial court denied Blue Cross's motion to compel arbitration. It concluded that Blue Cross had failed to provide any specific evidence that McCoy was on any of the mailing lists, or that it had actually mailed the notice to McCoy. The trial court did not address Blue Cross's argument that McCoy had waived his right to contest the arbitration provision. Blue Cross appealed the trial court's ruling.

¶ 8 The court of appeals affirmed. It held that Blue Cross's affidavits did not show that McCoy's name and address were actually on the magnetic tape, or whether written notice of the policy amendment containing the arbitration provision was actually prepared and sent specifically to McCoy. *See McCoy v. Blue Cross & Blue Shield,* 1999 UT App 199, ¶ 16, 980 P.2d 694. The court of appeals also treated and rejected Blue Cross's argument that McCoy waived his right to contest the arbitration provision. *See id.* at ¶¶ 21–23.

## ANALYSIS

¶ 9 In its petition, Blue Cross argues that the evidence it presented, and inferences

drawn from that evidence, showed that Blue Cross had mailed the arbitration amendment to McCoy sometime between 1985 and 1990. Blue Cross asserts that the court of appeals erred in affirming the trial court on this issue. Alternatively, Blue Cross renews its argument, which it presented to both the trial court and the court of appeals, that McCoy waived his right to contest the arbitration provision when he failed to assert that right following reception of Blue Cross's January 1995 letter mentioning McCoy's right to seek arbitration. We address Blue Cross's arguments in that order.

## I. PROOF OR INFERENCE OF MAILING

¶ 10 Section 78–31a–4(1) of the Utah Code provides that "[t]he court, upon motion of any party showing the existence of an arbitration agreement, shall order the parties to arbitrate." In *Jenkins v. Percival*, 962 P.2d 796 (Utah 1998), a majority of this court held that arbitration agreements must be in writing to be enforceable under the Arbitration Act. *See id.* at 800 (Stewart, J., joined by Durham, J.); *id.* at 803 (Russon, J., joined by Howe, C.J., dissenting on other grounds). Where the evidence relating to a purported agreement to arbitrate is undisputed, the district court has no discretion under the statute. It must compel arbitration. *See, e.g., Docutel Olivetti v. Dick Brady Sys. Inc.*, 731 P.2d 475, 479–80 (Utah 1986) (construing contract to mandate arbitration of dispute).

¶ 11 Where the evidence is contested, however, the court must resolve evidentiary conflicts and determine whether the movant has shown the existence of an agreement between the parties according to the dictates of the statute. In such cases, the district court is accorded the traditional discretion attending the exercise of fact finding and weighing of evidence. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998).

¶ 12 In this case, the court of appeals held that the evidence Blue Cross presented was insufficient *as a matter of law* to require enforcement of the binding arbitration amendment. *See Sosa v. Paulos*, 924 P.2d 357, 360 (Utah 1996). We therefore review the legal correctness of that determination.

¶ 13 It is not the existence of the writing that is at issue in this case, but rather the existence of any agreement between McCoy and Blue Cross mandating arbitration of disputes arising under the insurance policy. *See* Utah Code Ann. § 78–31a–4(1). McCoy argues that the arbitration amendment did not constitute an agreement between him and Blue Cross because Blue Cross failed to present sufficient evidence that it had sent him notice of the amendment.

¶ 14 Because the Arbitration Act itself does not specifically define what level of proof is necessary to "show" an agreement, we look to the policy statements we have made in construing the Act for guidance. We have observed that "[t]he [Arbitration] Act supports arbitration of both present and future disputes and reflects long-standing public policy favoring speedy and inexpensive methods of adjudicating disputes." *Allred v. Educators Mut. Ins. Ass'n.*, 909 P.2d 1263, 1265 (Utah 1996); *see also Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 14, 1 P.3d 1095; *Intermountain Power v. Union Pacific R.R.*, 961 P.2d 320, 323 (Utah 1998); *Buzas Baseball v. Salt Lake Trappers*, 925 P.2d 941, 946 (Utah 1996). "It is our policy to interpret arbitration clauses in a manner that favors arbitration." *Docutel Olivetti*, 731 P.2d at 479.

¶ 15 Judicial promotion of alternative methods of dispute resolution is not the sole consideration, however. When parties agree to arbitrate, they waive the substantial right to judicial resolution of their disputes. *See Jenkins*, 962 P.2d at 799. Consequently, the policy of liberally construing agreements in favor of arbitration is conditioned upon the prior determination that arbitration is a " 'remedy freely bargained for by the parties and [which] provides a means of giving effect to the intention of the parties.' " *Docutel Olivetti*, 731 P.2d at 479 (quoting *Lindon City v. Engineers Constr. Co.*, 636 P.2d 1070, 1073 (Utah 1981) (further quotation omitted)); *see also Reed v. Davis County Sch. Dist.*, 892 P.2d 1063, 1065 (Utah Ct.App. 1995).

¶ 16 In this case, Blue Cross alleges a valid agreement to arbitrate pursuant to an amendment to the insurance policy purchased by McCoy. Blue Cross's policy reserved "the absolute right to modify or amend [its] agreement from time to time." The policy did not require that Blue Cross demonstrate that its policyholders actually received the notice of amendment, but rather deemed notice to have been received if Blue Cross could demonstrate that it had been "deposited in the United States Mail with first class postage prepaid and addressed to the subscriber at the address shown in the records of the policy." This placed Blue Cross in a substantially advantaged position because its policyholders had little or no ability to resist amendment, with their only recourse being to cancel the policy itself.[1]

¶ 17 In this context, we believe the Arbitration Act requires more than an inference of agreement between the particular parties to arbitrate future disputes. Evidence tending only to show an agreement between an insurer and a large group of people who are not specifically identified as named individuals in the recorded evidence does not suffice. Because parties to binding arbitration waive substantial rights to formal public adjudication of their disputes, the Act demands, as a minimum threshold for its enforcement, direct and specific evidence of an agreement between the parties. In the absence of such direct evidence, the proponent of arbitration has failed to "show an agreement to arbitrate," as required by the Act.

¶ 18 Blue Cross's evidence failed to meet the minimum threshold of specificity. Blue Cross presented testimony that described the process by which a policyholder list was prepared and by which mailings were purportedly sent to persons on that list but was unable to produce a copy of the list itself. Its evidence described general procedures but did not establish any actual mailing, or even an attempt to mail, that was directed to McCoy personally. We therefore hold that the court of appeals correctly affirmed the trial court on that ground.

## II. WAIVER

¶ 19 Alternatively, Blue Cross contends that even if it failed to prove that it mailed the arbitration amendment in accordance with the requirements of its policy, McCoy waived any right to contest that provision by failing to assert his rights following notice that a right to arbitration existed. When Blue Cross notified McCoy of its decision to deny benefits in 1995, it specifically stated that McCoy had a right to seek arbitration. McCoy filed suit two years after receipt of this letter.

¶ 20 The court of appeals held that the mere reference to a "right" to arbitration in the denial of benefits letter did not constitute sufficient notice of the binding arbitration amendment itself. *See McCoy,* 1999 UT App 199, ¶ 23, 980 P.2d 694. We agree. Waiver is the "'intentional relinquishment of a known right.'" *Geisdorf v. Doughty,* 972 P.2d 67, 72 (Utah 1998) (quoting *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n,* 857 P.2d 935, 942 (Utah 1993)). Blue Cross did not send McCoy a copy of the text of the arbitration amendment in the denial of benefits letter, nor did it inform him that arbitration was his only option under the amended policy. It is one thing to advise a policyholder of a right to arbitration; it is quite another to notify a policyholder that arbitration is required. Without knowledge that the provision was mandatory, McCoy could not have intentionally relinquished any right to file suit. We thus affirm the court of appeals' decision on this issue as well.

## CONCLUSION

¶ 21 We affirm the judgment of the court of appeals denying Blue Cross's motion to compel arbitration. The court of appeals correctly affirmed the trial court's determi-

---

1. As we observed in *United States Fidelity and Guaranty Co. v. Sandt,* 854 P.2d 519 (Utah 1993), "[i]nsurance contracts are typically drafted by insurance company attorneys who are duty-bound to protect the interests of their clients. The terms of a typical insurance policy are not negotiated by the insurer and the insured. A policy is usually offered on a take-it-or-leave-it basis." *Id.* at 522.

nation that Blue Cross had not presented evidence sufficient to establish an agreement to arbitrate. Moreover, McCoy did not have sufficient knowledge to waive any right to contest the arbitration provision. We therefore remand for further proceedings.

¶ 22 HOWE, C.J., RUSSON, Associate C.J., DURHAM, and JUDKINS, JJ., concur in DURRANT's, J., opinion.

¶ 23 Having disqualified himself, WILKINS, J., does not participate herein, CLINT S. JUDKINS, District Judge, sat.