## CAPITOL ELECTRIC CO. v. CAMPBELL.

No. 7194.   Decided April 19, 1950.   (217 P. 2d 392.)

See 41 C. J. S., Husband and wife, sec. 290. Agency of husband in making wife's property liable for mechanic's liens, see note, 4 A. L. R. 1025. See, also, 26 Am. Jur. 841.

*Elliott W. Evans,* Salt Lake City, for appellant.

*Dean E. Flanders,* Salt Lake City, for respondent.

COWLEY, District Judge.

Plaintiff (appellant) brought this action to foreclose a mechanic's lien for electrical equipment furnished and work done on property owned by defendant (respondent). From a judgment for defendant, plaintiff appeals.

Plaintiff furnished the electrical equipment and did the work at the instance and request of David J. Campbell, defendant's husband, and sought to hold the defendant responsible and to have and foreclose a lien on her property on the theory that David J. Campbell was the agent of his wife.

The trial court found that plaintiff sold the material and did the work on the personal credit of David J. Campbell, and that he was not the duly authorized agent of his wife, and entered judgment for the defendant, no cause of action.

Our lien statute is Title 52, Utah Code Annotated, 1943, and it provides that a lien may attach to an owner's interest in property for labor performed or materials furnished at the instance of an agent of the owner.

The sole question involved by this appeal is whether the trial court erred in finding that David J. Campbell was not the duly authorized agent of his wife, Susan M. Campbell.

The answer to this question requires a close examination and analysis of the facts as presented by the record.

At the outset we point out that the defendant offered no testimony, but rested at the close of plaintiff's case. The plaintiff was required to call Mrs. Campbell as their witness which may have put them to a disadvantage in attempting to establish an implied agency through her.

The facts are these: Defendant's husband, David J. Campbell, contacted Mr. James W. Latimer, co-partner of plaintiff company, to install electric meters and do the wiring for several apartments in the property designated at 729 North Second West, Salt Lake City, Utah. The plaintiff did the electrical work on this property between February 14, 1946 and April 24, 1946. During this time Mr. Campbell was on the premises every day, was overseeing the job and was participating in other remodeling work. Mrs. Campbell was never on the premises, did not take any interest whatever in the property and only saw the property a few times from the outside. Plaintiff charged the account to David J. Campbell, and after the work was completed made demands on him for payment. Plaintiff did not make any demands on defendant for payment at any time. Mr. Latimer filed the lien for the plaintiff company on June 24, 1946 and at this time discovered for the first time that defendant owned the property.

Prior to the time this job was commenced plaintiff had done two other similar jobs on two different properties for Mr. Campbell, Mr. Latimer testified that the same arrangements were made with Mr. Campbell on this job as on the other two jobs. On this and the other two jobs all arrangements were made by Mr. Campbell and the accounts were

charged to him. He paid for the other two jobs, except for a few dollars which was still delinquent at the time of his death.

The property in this case was purchased by Mr. Campbell on November 24, 1945 or about three months before the electrical work was commenced by the plaintiff. Mr. Campbell made all of the negotiations and conducted the entire transaction in the purchase of the property but he caused the deed to be executed and recorded in his wife's name. She testified that her husband caused the deed to be executed in her name because "his credit was not good." Defendant further testified that the deed was placed in her name without her sanction and that she always protested to her husband whenever he caused properties to be placed in her name. She stated as her reason for such protest that "she didn't want to get into trouble." At the time the deed was executed and recorded in defendant's name she signed a mortgage on the property. The importance of this fact will appear later. On April 1, 1946, about three weeks before the electrical work was completed, defendant and her husband signed a contract of sale to one Harold B. Brinton and wife. With this contract of sale was a "repair" agreement which they also signed by which they agreed to make certain repairs. The "repair" agreement did not include the electrical work for the reason that it was well advanced to completion. Defendant's husband engaged in all the negotiations and made all the arrangements for this sale to Mr. Brinton, the same as he had done for the purchase of the property, a few months prior.

Later Mr. Campbell died and left no estate. Defendant was required to deed the property back to the original owner, subject to the contract of sale in Mr. Brinton, as she could not make the purchase price payments.

From these facts the trial court held, as stated above, that David J. Campbell was not the duly authorized agent of defendant, but found that plaintiff relied solely on the credit of defendant's husband.

We shall first resolve the question as to when defendant first discovered that she was the legal owner of the property for the importance this question may have in determining plaintiff's history of implied agency.

Defendant was uncertain and her testimony confusing on this point. She claimed by some of her testimony that it was at the time she signed the contract of sale and "repair" agreement with her husband to Mr. Brinton on April 1, 1946. In other parts of her testimony she was not certain as to the time but thought it was at the time Mr. Campbell borrowed money from the Tracy-Collins Company. This testimony has reference to the time she signed the mortgage in November, 1945. This latter testimony is the more convincing and therefore we believe the preponderance of the evidence would support a finding that she knew that she was the owner of the property prior to the commencement of the electrical work. Had defendant not discovered that she owned the property until April 1, 1946 when she and her husband executed a contract of sale of the property in favor of Mr. Brinton, the plaintiff undoubtedly would have had to have relied upon a ratification of her husband's contract with plaintiff, or relied on a new contract between plaintiff and defendant, or sued in quasi-contract. These theories were not plead and are not involved in this case, and properly so under the testimony as it was developed at the trial.

For a reversal plaintiff relies on the Oklahoma case of *Caldwell* v. *Overall*, 1940, 186 Okl. 615, 99 P. 2d 496. In this case the lien was foreclosed against the wife's property for work which was contracted for by her husband on the grounds that he was her duly authorized agent. This case, however, is unsatisfactory to a determination of our problem for the reason that the court failed to detail the facts from which it drew its conclusion. The Oklahoma court merely said:

"Without going into detail, it is sufficient to say that the facts and circumstances shown, as well as the admissions of the defendant, lead

to the conclusion that the work was done for her, and that she knew that plaintiff had been employed for such purpose by the husband, and accepted his services with such knowledge."

We must assume that "the facts and circumstances" in this case, as well as the "admissions" of the defendant justified the conclusion reached by the court. With this assumption we agree with the decision of the Oklahoma court.

We also agree with the law as stated in the Caldwell case and will quote it for its applicability in analyzing the facts of the case at bar:

"While the husband's authority to act for his wife *is not implied from the marital relation, nor from the mere fact that he occupied, or managed and controlled, his wife's property, yet in many instances the agency of the husband is inferred from the circumstances,* as when the wife knew that the lien claimant was working on the building, and personally gave him directions as to parts of the work, when she participated in conversations between the contractors and her husband relative to the work while it was being done, or when she furnished what money was paid on some material and the building of the house." 18 R. C. L. 901; 40 C. J. p. 99, Sec. 87; 57 C. J. S., Mechanics' Liens, § 63.

We agree with this text statement of the law that some fact or circumstance is required in addition to the marital relation and management of the wife's property by the husband before an agency of the husband will be inferred. We do not contend however that the illustrations given in the text statement "as other circumstances from which an agency of the husband will be implied" are all inclusive.

We have found that defendant knew that she was the legal owner of the property in question at the commencement of and during the time the work was in progress. In our analysis of the facts we shall first separate those facts which are most favorable to a finding of implied agency. They are (1) that the marital relation existed between defendant and David J. Campbell; (2) that defendant knew she owned the property; (3) that

David J. Campbell managed and controlled his wife's property, and (4) that defendant did not protest the doing of the work or her liability to either her husband or the plaintiff. Under the law as quoted above and approved by us the combination of the first three facts are not enough to infer an agency, but some additional fact or circumstance must be found. Plaintiff contends that defendant's "failure to protest" under subdivision (4), is the additional fact or circumstance that would justify a finding of agency. On this point see the Utah case of *Morrison, Merrill & Company, Respondents,* v. *Clark, Appellant,* 1899, 20 Utah 432, 59 P. 235, 77 Am. St. Rep. 924. In the *Clark* case the lien claimant failed because the wife (Mrs. Clark) protested to her husband the construction of a house on her separate property and for other reasons which we deem unnecessary to discuss. A wife's "failure to protest" under subdivision (4) could be a strong determining circumstance in a proper case to infer an agency, as for example, if the work is done "for her" as stated in the *Caldwell* case or the converse of what this court said in the *Clark* case "on her behalf." In the case at bar there is not a scintilla of evidence to show that the work was done either "for" or "on behalf" of defendant. To the contrary the record shows that the work was performed for Mr. Campbell and his benefit. Our reasons briefly stated in reaching this conclusion are that defendant held the mere legal title to the property and was not the true owner. This is borne out by the fact that Mr. Campbell caused the title to be placed in his wife's name without her sanction and over her protest, and by the further fact that she took no interest in the property whatever. On the other hand, the record reveals that Mr. Campbell treated the property in every respect as his own property. This is evidenced by the fact that he purchased the property, remodeled it into apartments, entered into the contract with plaintiff for the electrical work in his name, resold the property to Mr. Brinton, and did everything in respect to the property that he desired to do without consulting his wife. When defendant signed the purchase price

mortgage in November, 1945 and signed the contract of sale to Mr. Brinton on April 1, 1946, she did so at the request and by the directions of Mr. Campbell. This is ample proof that Mr. Campbell was the true owner of the property and that the work was done for his benefit and not defendant's.

Under all the facts and circumstances of this case it cannot be said that David J. Campbell was the agent of his wife. Mr. Campbell was in fact the principal acting on his own behalf.

Judgment affirmed. Costs to respondent.

PRATT, C. J., concurs.

LATIMER, J., having disqualified himself, does not participate.

WOLFE, Justice (concurring).

I concur in the opinion of District Judge COWLEY that the lower court did not err in finding that the decedent was not acting as agent for his wife. In reality, the decedent was the owner of the property in question and contracted with the plaintiff in reference to the property on his own behalf.

But I think this should dispose of the case and judgment should be affirmed. I have sympathy for the result arrived at by Mr. Justice WADE, but I regret that I cannot concur with him even though he reaches a just result. The situation is as follows:

The plaintiff, looking at the record of the county recorder, found that the wife was the record owner of the property for which it had furnished materials. It thereupon filed its notice of intention to claim a materialman's lien naming the wife as the owner, whereas the notice could have named both the husband, who ordered the materials, and the wife as owners. Parenthetically, I doubt if such mistake in the notice of claim is necessarily fatal. But I hasten to remark

that I do not think, as does Mr. Justice WADE, that this is a case of an unknown owner as meant by Section 52-1-7, U. C. A. 1943. This point being unimportant to the discussion I am now making, I will dismiss it by saying that where one or the other of two known persons is the owner and the materialman has assumed that one of them is the owner and furnished materials to him as such and he really is the owner, then it is a matter not of not knowing the owner, but of being misled because one, not the owner, appears on the record as such. I think the real owner could be estopped from claiming he was not the owner, but whether the wife could be estopped from claiming she was not the owner is doubtful.

Be that as it may, I resume a recital of the happenings in the lower court. The plaintiff started foreclosure against only the wife as the record owner whom it believed to be the true and sole owner. She was put on the stand by the plaintiff as its witness. She testified that she had no interest in the property but that it belonged to her husband solely. In legal parlance she was a dry trustee—a mere container into which the title was placed for record purposes. The plaintiff, probably taken by surprise, might at this point have asked for leave to amend to plead an estoppel against her but better still perhaps, as Mr. Justice WADE suggests, obtained leave to amend to plead an estoppel against her deceased husband, which estoppel, it is said, could be used against his successors. But this was not done and judgment was rendered against the plaintiff on the only issue raised—that of agency of the husband for his wife. The case was appealed to this court solely on the theory that in fact the wife was the owner and the husband was her agent to procure the materials. We find then a situation where the materialman (plaintiff) has benefited the property at the instance of the owner. This court finds unanimously that the lower court was correct in holding that the wrong party was sued and hence right in dismissing the action for the reason that there was no evi-

dence that the husband was the agent of the wife, but that he, himself, was the owner, and that there was nothing to estop the wife from disclosing the true situation. But because the plaintiff was misled into foreclosing only against the wife, the wrong party, and because the statute of limitations has now probably run against foreclosing the lien so that a new action may be defeated, Mr. Justice WADE desires to reverse the judgment, not for error, but to send the case down with instructions to set the judgment aside, join other parties, permit amendments to the pleadings to present the theory devised by him, and re-try the case with the new parties on such freshly introduced theory.

Under our old code procedure, this certainly could not be done. I do not think it can be done under the new Utah Rules of Civil Procedure. Rule 21 dealing with Misjoinder and Non-Joinder of Parties reads as follows:

"Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."

I do not think that the phrase "any stage of the action" means any stage of the action even when it has reached the review court, although the action may pend until judgment has been rendered in the Supreme Court on appeal and until a re-trial has been had on instructions issuing from the Supreme Court. See Sec. 104-54-13, U. C. A. 1943.

The vice of this proceeding is that we are asked virtually to affirm the lower court's judgment on the only theory on which the case was there tried, but instead of actually affirming it on that issue when we find the court's conclusion correct, Mr. Justice WADE would reverse it for the purpose of permitting pleadings to be recast so as to comport with the theory devised by our ingenuity and to permit the court, in effect, to drop the only party sued as a defendant, bring in new parties and try the case over

again on the theory devised by him, which theory not only involves a different legal aspect of the same fact situation, but embraces a new and controlling fact, to-wit, the ownership of another party, the husband instead of the wife.

In the case of *Loos* v. *Mountain Fuel Supply Company*, 99 Utah 496, 108 P. 254, we allowed a recasting of the pleadings to make more certain the issue of res ipsa loquitur. But in that case we *reversed* the judgment because of error in instructing on the issues raised by allegations of specific negligence and refusal to instruct on the issue of res ipso loquitur when there was no evidence to support such allegations of specific negligence, but there was evidence to support an issue of res ipsa loquitur. In short, when we reversed for error we permitted a new trial and allowed amendments, but I have never known of a case under the old rules where we held the lower court was correct on its judgment on the issues raised and on the theory presented, and yet reversed the case with instructions to permit amendments, drop old parties, bring in new parties and re-try it on a theory devised by us, even though such theory would apparently bring the results we thought would do justice. Neither under the old code of civil procedure, title 104, Utah Code Annotated 1943, nor under the newly adopted Utah Rules of Civil Procedure, can a plaintiff who has tried his case and lost, amend his pleadings, try his case over again on a different theory reflecting different facts and against different defendants, instead of commencing a new action.

I have consistently endeavored to follow the admonition of Sec. 88-2-2, U. C. A. 1943, which enjoins us to construe statutes and proceedings under them liberally with a view to effectuate the objects of the statutes and promote justice. Perhaps the best evidence of that is furnished by the case, of *Loos* v. *Mountain Fuel Supply Company*, supra. It appears to me that Mr. Justice WADE'S solution, although perhaps bringing a just result, would require us to adopt a new theory, conceived out of the ingenuity of our minds,

applicable to different facts from those alleged, and not advanced in the court below. Not only would we have to send the case down for the application of the newly found theory, but it would require the case to be opened up for the admission of new parties and for necessary pleadings on their part, and for amendment which would introduce a new fact situation. What Mr. Justice WADE suggests is really trying a new suit within the shell of the old one.

I intend to decide matters in the spirit of the new rules but there is a limit beyond which I cannot go. I cannot agree to the creation of a new rule to meet the exigencies of each case in order to reach a desired result. We cannot tailor the rules to fit each case. Perhaps we could fashion a rule which would permit this court to reverse a case even though it had been correctly decided below on the issues tendered if the dictates of justice required a different decision and we could think up a theory which the evidence would support, but it would need to be closely guarded to apply to certain limited situations or we would be changing the funtions of this court from one of review of alleged errors with power to order proceedings to correct error into a court of legal aid and assistance. We would then accentuate what tendency there is on the part of a portion of the bar to make this court not only one of review, but one which will seek out and think up ways and means to bring about a result we may think justice demands, despite inadequate preparations or a thorough thinking through by counsel. In the long run, a judicial policy which looks to the overall ultimate effect of the method of the functioning of this court cannot be sacrificed to the immediate desirable results which may be obtained by the application of an ingenious but esoteric or special procedure to accomplish a rectification we think desirable to meet the ends of justice of the peculiar situation in a particular case. Such policy would be revolutionary and it is doubtful whether in the long view it would be beneficial to our system of jurisprudence. Now and then we may take liberties with prescribed

procedure if they come within what is called interpretation. There is some leeway in the realm of construction and interpretation.

Had the plaintiff, after discovering at the trial below that the decedent and not the defendant was the owner of the property in question at the time the plaintiff expended labor and materials upon the property, commenced an action within a reasonable time to foreclose its lien against the defendant's successors in interest, and had the latters relied upon a statute of limitations as a bar to the plaintiff's action, it is arguable that the decedent's successors in interest could be estopped from seeking repose in any statute of limitations barring the plaintiff's new action, because of the misleading act of the decedent in placing on record that his wife owned the property in question when in fact she did not. However, the plaintiff did not choose to commence an action against decedent's successors in interest, but chose instead to prosecute this appeal. Whether in prosecuting this appeal, the plaintiff has allowed to elapse more than a reasonable period of time within which the defendant's successors in interest could have been estopped from pleading a statute of limitations in bar, of course is not before us for determination, and I express no opinion on it.

WADE, Justice (dissenting).

I agree that defendant's deceased husband was not acting as her agent in procuring plaintiff to do this job because he was the equitable owner acting on his own behalf and she held the bare legal title. But, if she had been the owner and had allowed him to manage the property and contract for labor and materials, as he did, I am not prepared to hold that the evidence is not sufficient to establish that he was acting as her agent.

Under her evidence, which she disclosed to plaintiff for the first time at the trial, he was the equitable owner of the property and she merely held the legal title. This evi-

dence was produced by her to defeat plaintiff's claim that he was her agent. I wonder if her testimony would have been the same had plaintiff, in its claim of lien and complaint, instead of claiming that he was her agent claimed that he was the equitable owner of the property. Under this decision we have opened up an opportunity for defendant to wait until plaintiff discloses its theory and then regardless of which theory plaintiff adopts, to formulate its evidence to defeat plaintiff's claim by proving the opposite theory to be the correct one. I fear that grave injustice and unnecessary complications will be the result.

Here the plaintiff, lien claimant, relying on the record title, both in the complaint and the claim of lien designated the defendant as the owner of the property, and stated that plaintiff was engaged to do the job by defendant's husband. Apparently, plaintiff had no information which indicated that the husband was the equitable owner and that defendant was the holder of the bare record title until defendant's evidence was produced on the trial. Such being the case, under the prevailing opinion, plaintiff is now out of court because there was no way to discover what defendant's evidence would be until it was too late. Under such circumstances plaintiff should be allowed to amend the pleadings to conform to the proof and to bring in as parties defendant the successor in interest of defendant's deceased husband and try the case on the theory that the deceased husband was the equitable owner acting for himself and not as agent for the defendant. Otherwise this issue probably can never be litigated because the time within which to commence a suit to foreclose this lien will have expired before another suit can be commenced.

The claim of lien as well as the pleadings stated that defendant was the owner of the property and that plaintiff was engaged to do the job by her deceased husband. This was sufficient to establish a lien against the interests of both defendant and her deceased husband even though he was the equitable owner and she merely held the record

title to the property. Section 52-1-7, U. C. A. 1943, which sets out the necessary elements of a claim of lien, in regard to a statement of the owner, requires only a statement of

"the name of the owner, if known, and also the name of the person by whom he was employed or to whom he furnished the material."

There is no evidence that plaintiff knew that the husband was the equitable owner so the statutory requirements are fully complied with by this statement and are sufficient to create a lien on both the interest of defendant and her deceased husband. The deceased husband placed the record title in his wife's name and thereby held out to the public that she was the owner, and plaintiff relying on that holding out stated in their claim of lien that she was the owner and that plaintiff was engaged to do the job by him. In view of these facts, the decedent and his successors are estopped from now claiming that his interest in the property is not covered by the claim of lien on the ground that such claim did not designate him as the owner of the property. This was a substantial compliance with the lien statute. Any one reading the claim of lien would be notified that if the decedent had any interest in the property the lien claimant was claiming a lien against that interest as well as the interest of the defendant. To hold that either the interest of the defendant or her deceased husband was not covered by this claim of lien would be to totally disregard the requirements of Section 88-2-2, U. C. A. 1943, which provides:

"The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the statutes of this state. The statutes establish the laws of this respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed with a view to effect the objects of the statutes and to promote justice. * * *"

A liberal construction of this statute with a view to effect its objects and to promote justice, requires that plaintiff be given the opportunity of proving his lien as against

the interests, as they now appear, of defendant, as well as the interest of her deceased husband.

In his concurring opinion Mr. Justice WOLFE seems to agree that the herein suggested procedure would meet the ends of justice. But he suggests that since plaintiff's counsel failed to recognize that under the facts proved he could not succeed on the theory that plaintiff was the owner of the property, and therefore failed to ask leave to amend his pleadings to conform to the proof and to bring in, if necessary, other parties and try the case on the theory that plaintiff's deceased husband was the owner, this court is now powerless to do what the ends of justice require. The injunction of section 88-2-2, U. C. A. 1943, that statutes be liberally construed to effect their objects and promote justice is just as much applicable to cases after judgment as before.

I did not invoke the new Utah Rules of Civil Procedure because the case was argued and most of the work done on this opinion before January 1, 1950, when those rules went into effect. I am however of the opinion that Rule 1 of such rules providing that

"they shall be liberally construed to secure the just, speedy and inexpensive determination of every action,"

Rule 15 dealing with amendments to the pleading, and Rule 21, quoted by Mr. Justice WOLFE are ample to justify the procedure herein suggested. I have great difficulty to understand how Mr. Justice WOLFE construes the words of Rule 21 to apply only to cases where this court finds that the trial court erred in its disposition of the case. The language of this rule contains no such limitations. It authorizes the addition or dropping of parties

"by order of the Court * * *. *of its own motion at any stage of the action* and on such terms as are just." (Emphasis mine.)

To hold that the procedure herein suggested is contrary to those provisions seems to fly in the face of the clear and unambiguous language of that Rule.

Nor is the suggestion that to follow the herein proposed procedure will require this court to finally pass on a question which has not been carefully considered and argued by counsel applicable to this case. For if this matter were remanded with directions to allow amendments and the bringing in of new parties if necessary, every party would have ample time to prepare his case and argue it both to the court below and to this court on appeal. That such procedure is novel and revolutionary does not seem to be very impressive when considered and compared with Mr. Justice WOLFE'S suggestion that the statute of limitations may not be a bar to a future action by the plaintiff under the theory that the husband was the real owner of the property, in view of the facts and circumstances of this case. I contend that such procedure will be a credit to any system of jurisprudence both on account of the overall ultimate effect, as well as the immediate desirable results. For a system which will require a determination of the cases on their merits rather than to bar one party from his just rights because he was misled by the other party to proceed on an untenable theory under a mistake of the facts, is a bad system and will defeat the very purpose of courts both in this case and the overall results.

It is a sad state of affairs if this court is so bound by formalities that in a case like this, the obvious objects of the statute must be thwarted and justice defeated merely because plaintiff in making its claim of lien and drawing its complaint was misled by defendant and her deceased husband into believing that defendant was the owner and he was her agent. I therefore dissent.

McDONOUGH, J., concurs in the dissenting opinion of Mr. Justice WADE.