2006 UT 77

**Stanford M. ELLSWORTH, Plaintiff and Appellant,**

v.

**The AMERICAN ARBITRATION ASSO-CIATION, a New York corporation; Lowell Construction Company, a Utah corporation, and Carol Lee Fairbanks Naylor, Defendants and Appellees.**

No. 20050371.

Supreme Court of Utah.

Dec. 5, 2006.

D. Scott Crook, Scott M. Ellsworth, Salt Lake City, for plaintiff.

Robert F. Babcock, Kent B. Scott, Shawn W. Potter, Salt Lake City, Evan A. Schmutz, Curtis R. Hussey, Provo, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This case involves a dispute over whether Plaintiff Stanford M. Ellsworth is bound by the arbitration provision of a construction and remodeling contract. The district court granted summary judgment in favor of Defendant Lowell Construction Company (Lowell), finding that Mr. Ellsworth was bound by the arbitration provision and dismissing Mr. Ellsworth's suit for declaratory relief. Mr. Ellsworth appealed, arguing that: (1) the district court erred in granting Lowell's motion for summary judgment because of disputed material facts; and (2) the district court erred by dismissing Mr. Ellsworth's action rather than issuing a stay pending the conclusion of the arbitration proceedings as required by Utah Code section 78–31a–108(7) (2002). We hold that the district court erred in entering summary judgment in favor of Lowell because, as a matter of law, the facts of this case do not amount to direct and specific evidence of an agreement to arbitrate.[1] Because our holding is dispositive of this appeal, we do not address whether the district court should have stayed the proceedings.

## BACKGROUND

¶ 2 "When reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, here the plaintiff. We recite the facts accordingly." *Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 3, 116 P.3d 271 (citation and internal quotation marks omitted).

¶ 3 In 1997, Mr. Ellsworth married Carol Lee Fairbanks Naylor. Prior to marriage, Ms. Naylor owned a house and property located in Salt Lake City, and the couple resided in Ms. Naylor's home throughout their marriage.[2] During the marriage, Ms. Naylor remained the sole legal owner of the house. In April 2002, a tree fell on Ms. Naylor's home. Shortly thereafter, Ms. Naylor began planning for repairs to the damaged house; the repairs were to be paid for by an insurance policy.[3]

¶ 4 Ms. Naylor negotiated the terms of a contract to repair the home with Gary Evershed, with the work to be completed by Lowell.[4] Mr. Ellsworth was present during conversations Ms. Naylor had with Mr. Evershed but never represented that he intended to be a party to the agreement, that he had any ownership interest in the house, or that Ms. Naylor had authority to act as his agent. On June 11, 2002, Mr. Evershed presented a contract (the June 11 Agreement), prepared by Lowell, to Ms. Naylor. On the June 11 Agreement's cover page, both Ms. Naylor and Mr. Ellsworth were listed as "Owners," and the "Project" was identified as

1. The sole issue before this court concerns the forum that dispute resolution should take between Mr. Ellsworth and Lowell. Any other questions regarding contractual obligations outside this narrow issue are not before us.

2. The marriage is now dissolved.

3. Mr. Ellsworth states in his affidavit that the insurance policy was "never in [his] name" and that he believes it "remained in the name of Ms. Naylor's deceased husband, Douglas."

4. Mr. Evershed is a representative and principal of Lowell.

the "Naylor/Ellsworth Residence."[5] However-er, the signature page had only one signature line, labeled "Owner." Ms. Naylor signed the June 11 Agreement's signature page as "Owner"; Mr. Ellsworth did not.

¶ 5 After the June 11 Agreement was entered, Ms. Naylor and Lowell began negotiating for Lowell to perform additional remodeling work on the home. The circumstances surrounding Mr. Ellsworth's involvement in those negotiations are substantially similar to those of the June 11 Agreement. A contract for that project (the June 20 Agreement), prepared by Lowell, was presented to Ms. Naylor on June 20, 2002. As with the June 11 Agreement, the cover page of the June 20 Agreement listed both Ms. Naylor and Mr. Ellsworth as "Owners" and identified the "Project" as the "Naylor/Ellsworth Residence Remodel." The June 20 Agreement's signature page also had only one signature line, underscored by the word "Owner," and the contract was signed only by Ms. Naylor.

¶ 6 The terms of the June 11 Agreement and the June 20 Agreement are nearly identical, particularly the provisions relevant to this appeal.[6] The arbitration provision at issue here, found at item 10.8 of the June 11 Agreement and item 15.8 of the June 20 Agreement, provides as follows: "All claims or disputes between the Contractor and the Owner arising out of or relating to the Contract Documents, or the breach thereof, shall be decided by arbitration."

¶ 7 The dispute in this case arises specifically from the events following the signing of the contract, which are hotly debated by the parties. From the facts in the record, it appears that Mr. Evershed approached Mr. Ellsworth on several occasions, outside the presence of Ms. Naylor, in order to talk about the project. Mr. Ellsworth claims that, on all of these occasions, he deferred making any decisions about the project until he could speak with Ms. Naylor. On the other hand, Lowell claims that on certain occasions Mr. Evershed discussed costs of the project with Mr. Ellsworth, and Mr. Ellsworth asked him not to tell Ms. Naylor about the total costs of some parts of the work. Mr. Ellsworth denies this. In April 2003, Lowell represented that it had completed the work and sent a final bill to Ms. Naylor.

¶ 8 Following the completion of the project, a dispute arose between Ms. Naylor and Lowell concerning unperformed work that was nevertheless billed to the insurance company, disputed costs, undelivered invoices, and a lack of supporting documentation of the costs of the project.[7] Through their attorneys, Ms. Naylor and Lowell exchanged a series of correspondence regarding their disputes.

¶ 9 In June 2004, Lowell filed a Demand for Arbitration with the American Arbitration Association (AAA) against both Mr. Ellsworth and Ms. Naylor. Mr. Ellsworth objected to the jurisdiction of the arbitrator, claiming that he was not party to either the June 11 Agreement or the June 20 Agreement, which contain the arbitration clauses on which Lowell based its demand. In September of that year, Mr. Ellsworth also filed a complaint naming the AAA, Lowell, and Ms. Naylor as defendants. In his complaint, Ellsworth asked for (1) a declaratory judgment that he is not a party to the June 11 Agreement or the June 20 Agreement and is therefore not subject to the agreements' arbitration clauses, and (2) a stay of the arbitration proceedings and a permanent injunction prohibiting Lowell and the AAA from proceeding against him through methods of dispute resolution that he did not bargain

5. The parties dispute the facts surrounding a previous draft of the agreement, which Lowell claims misidentified Mr. Ellsworth's first name. In his affidavit, Mr. Evershed claims that the mistake was corrected when brought to his attention by Mr. Ellsworth and Ms. Naylor. In his own affidavit, Mr. Ellsworth denies that he said anything to Mr. Evershed about the error.

6. The contracts differ as to material terms such as the specific tasks to be performed, the dates of performance, and the provisions for payment of costs. However, the remainder of the contracts apparently come from the same form contract.

7. Lowell asserts that the discrepancy in the quoted and actual costs, as well as the failure to deliver invoices and supporting documentation to Ms. Naylor and Mr. Ellsworth, is the result of active fraud and concealment by Mr. Ellsworth. Mr. Ellsworth denies this.

for. Ms. Naylor answered Mr. Ellsworth's complaint and made counterclaims and cross-claims against the other parties.[8] She also moved to stay the arbitration proceedings.[9] Lowell opposed that motion and moved to dismiss all claims against it and to compel arbitration.

¶ 10 A hearing concerning Ms. Naylor's motion to stay arbitration and Lowell's motion to dismiss the complaint and compel arbitration was held before the district court on January 31, 2005. After the hearing, the court granted Lowell's motion to dismiss Mr. Ellsworth's action, denied Ms. Naylor's motion for a stay of the arbitration proceedings, and ordered the parties to arbitrate. Mr. Ellsworth appealed to this court on April 11, 2005. We originally transferred the case to the Utah Court of Appeals pursuant to Utah Code section 78–2–2(4) (2002). We then recalled the case on February 21, 2006, after briefs had been filed but before the court of appeals had heard oral argument. We have jurisdiction over this matter pursuant to Utah Code section 78–2–2(3)(j) (2002).

## STANDARD OF REVIEW

¶ 11 While Lowell moved to dismiss Mr. Ellsworth's complaint pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure, when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Utah R. Civ. P. 12(b) (2006). Because "affidavits or other evidence" were presented to, and not excluded by, the district court, we review that court's decision as a summary judgment. *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 839 (Utah 1996).

¶ 12 "[A] challenge to a summary judgment presents for review only conclusions of law because, by definition, cases decided on summary judgment do not resolve factual disputes." *Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1111 (Utah 1991). We review the district court's legal conclu-

sions for correctness, without according deference to the district court. *Id.*

## ANALYSIS

¶ 13 Mr. Ellsworth appeals the judgment and order of the district court on two grounds. First, he argues that the district court erred by granting summary judgment in favor of Lowell. Second, he argues that the district court was required, under Utah law, to stay the judicial proceeding pending the outcome of the arbitration instead of dismissing his suit. We agree with Mr. Ellsworth that the district court's grant of summary judgment in favor of Lowell was improper and erroneous. Moreover, under the facts of this case, we do not believe that direct and specific evidence of an assent to arbitrate by Mr. Ellsworth exists. Accordingly, we hold, as a matter of law, that Mr. Ellsworth is not bound by the arbitration clause. We reverse and remand to the district court with instructions to enter declaratory relief and grant an injunction in favor of Mr. Ellsworth. Because our holding disposes of Mr. Ellsworth's appeal, we do not address whether the district court should have stayed the proceedings.

¶ 14 Arbitration is a matter of contract law, *Cade v. Zions First Nat'l Bank*, 956 P.2d 1073, 1076 (Utah Ct.App.1998), and state-law principles of contract formation apply, *id.* at 1077 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). In order to require a party to submit to arbitration, there must be an agreement to arbitrate. *Id.* at 1076–77. While there is a presumption in favor of arbitration, that presumption applies only when arbitration is a bargained-for remedy of the parties. *Id.* at 1077. The "minimum threshold for ... enforcement[ of an arbitration agreement is] direct and specific evidence of an agreement between the parties." *McCoy v. Blue Cross & Blue Shield of Utah*, 2001 UT 31, ¶ 17, 20 P.3d 901. Direct and specific evidence re-

---

8. Mr. Ellsworth's claims against Ms. Naylor and her counterclaims against him were dismissed by stipulation of the parties in April 2005. Mr. Ellsworth also voluntarily dismissed his claims against the AAA.

9. Mr. Ellsworth joined Ms. Naylor's motion to stay arbitration.

quires non-inferential evidence. *Id.* Furthermore, it requires an agreement between the *particular* parties regarding arbitration of future disputes. *Id.*

¶ 15 The district court erred in granting summary judgment for Lowell because the facts offer no direct and specific evidence of an agreement to arbitrate. The district court relied on two things to support its decision that Mr. Ellsworth was bound by the agreement to arbitrate: first, the contract itself, and second, Mr. Ellsworth's participation in decision-making related to the contract.

## I. THE APPEARANCE OF MR. ELLS-WORTH'S NAME ON THE CONTRACT DOCUMENTS, BY ITSELF, IS INSUFFICIENT EVIDENCE TO SHOW THAT HE ASSENTED TO THE AGREEMENT TO ARBITRATE

¶ 16 First, the district court relied on the actual contract in making its decision. Specifically, the court relied on the fact that Mr. Ellsworth was identified as an "Owner" and his residence was designated as the "Project." We do not think that the mere fact that Mr. Ellsworth's name appears on the cover page of the contract, without more, is sufficient to constitute assent to arbitrate with Lowell, especially when the contract was drafted by Lowell and unsigned by Mr. Ellsworth.

¶ 17 Moreover, the remainder of the contract makes the inclusion of Mr. Ellsworth's name ambiguous. Any ambiguity in a contract is to be construed against the drafter, in this case, Lowell. *Nielsen v. O'Reilly*, 848 P.2d 664, 666 (Utah 1992). One such ambiguity is the discrepancy between the listing of two owners on the cover pages of the contracts and the inclusion of only one space for the owner's signature. No one argues that Mr. Ellsworth requested that his name be on the document. To the contrary, Mr. Ellsworth forcefully asserts that he and Ms. Naylor made clear to Lowell that Mr. Ellsworth would not be responsible for the contract. Lowell drafted the contract, and it

is unknown what circumstances led it to include Mr. Ellsworth as an owner on the cover page, while not providing him a space to clearly manifest his assent through a signature. Even assuming that Lowell is correct in saying that it was "not aware of the ownership status of the Naylor/Ellsworth residence until after the present dispute arose," as the drafter of the contract, ambiguities will be construed against it. *Id.* Construing this discrepancy against Lowell means that only Ms. Naylor assented to arbitrate because only she manifested her assent to arbitrate by signing the contract. The fact that Mr. Ellsworth's name appears on the cover page may have been no more than drafter's error, and using the standard of direct and specific evidence, we cannot infer that there was an agreement to arbitrate between the particular disputants in this case—Mr. Ellsworth and Lowell.

¶ 18 We hold that the fact that a person's name appears on a contract as a party to it, without more, is not direct and specific evidence that that particular person has assented to the agreement to arbitrate. In this case, it is therefore insufficient as a matter of law to show that Mr. Ellsworth assented to an agreement to arbitrate.

## II. MR. ELLSWORTH'S PARTICIPATION IN DECISION–MAKING RELATED TO THE CONTRACT DID NOT BIND HIM TO THE AGREEMENT TO ARBITRATE UNDER THE DOCTRINES OF NONSIGNATORY ESTOPPEL OR AGENCY

¶ 19 Of course, no signature is required for a person to become party to a contract. *Commercial Union Assocs. v. Clayton*, 863 P.2d 29, 34 (Utah Ct.App.1993). Performance may bind a party to a contract that it has not signed. *Id.* Thus, the second piece of direct and specific evidence the court relied upon was "substantial participation" by Mr. Ellsworth in decision-making related to the contract along with his wife.[10] The district court accepted Lowell's argument that Mr. Ellsworth's "substantial participation" meant he was "estopped from denying his

---

**10.** We believe that in finding this fact, the district court erred since summary judgments should not resolve factual disputes. *Schurtz v. BMW of N. Am. Inc.*, 814 P.2d 1108, 1111 (Utah 1991).

duties under the Agreement and should be required to arbitrate pursuant thereto." The general rule of arbitration agreements is that one who has not manifested assent to an agreement to arbitrate cannot be required to submit to arbitration. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir.2000). However, under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties. *Id.* at 416–17.[11]

■ ¶ 20 We do not believe that the nonsignatory estoppel exception applies to Mr. Ellsworth. The rationale behind this exception is that a nonsignatory should be estopped from avoiding arbitration when the nonsignatory seeks to benefit from some portions of the contract but avoid the arbitration provisions. *Id.* at 418. In cases where estoppel has been implemented *against a nonsignatory*, the nonsignatory has sued a signatory on the contract to his benefit but sought to avoid the arbitration provision of the same contract.[12] *See Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361 (5th Cir.2003). A nonsignatory will also be estopped when it receives a "direct benefit" from the contract which contains the arbitration clause. *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir.1999). This variety of nonsignatory estoppel has been employed only when the nonsignatory sues the signatory on the agreement after receiving "direct benefits" but seeks to avoid arbitration. *See Bridas*, 345 F.3d at 362. Mr. Ellsworth does not fit under either of these categories. He is not attempting to sue Lo-

well on the contract; on the contrary, he seeks to avoid the obligations of the contract altogether. Also, he has not received any direct benefit from the contract. His occupancy of a repaired home of which he was not an owner is not a direct benefit, but an indirect one "where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir.2001). We hold that the nonsignatory estoppel exception does not apply to Mr. Ellsworth, a nonsignatory who is not suing on the contract and who has not received direct benefits from the contract. Even if his conduct indicates an assent to the contract, it in no way indicates that he assented to arbitration. This is true whether we consider the disputed or undisputed facts of the case.

■ ¶ 21 Furthermore, Mr. Ellsworth is not bound to the arbitration agreement through the nonsignatory theory of agency. There is no evidence that Ms. Naylor had the authority to act as an agent for Mr. Ellsworth.[13] Mr. Evershed does not explicitly claim in his affidavit that he ever believed that Ms. Naylor had an agent's authority. Even if Lowell believed this, there is a lack of evidence of any conduct by Mr. Ellsworth or Ms. Naylor which might have led to that conclusion. Instead, Mr. Ellsworth claims that the couple made no representation to Lowell that Ms. Naylor had an agent's authority. " '[T]he [spouse's] authority to act for [the other spouse] is not implied from the marital relation, nor from the mere fact that

---

11. Mr. Ellsworth correctly points out that the nonsignatory estoppel exception has never been applied in Utah. Nevertheless, we know of no reason why it could not be, in the appropriate situation.

Traditionally, five theories for binding a nonsignatory to an arbitration agreement have been recognized: (1) incorporation by references; (2) assumption; (3) agency; (4) veil-piercing/alterego; and (5) estoppel. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir.2000). Sometimes a sixth theory, third-party beneficiary, is added, but it is closely analogous to the estoppel theory. *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356, 362 (5th Cir.2003). In this case, only the agency and estoppel theories apply.

12. Another variety of nonsignatory estoppel is that enforced *by a nonsignatory* when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory. *Bridas*, 345 F.3d at 360–61 (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526–28 (5th Cir. 2000)).

13. The parties briefed the agency issue from this point of view—Ms. Naylor as the agent of Mr. Ellsworth. We note that the result would be the same regardless of which spouse we consider the agent.

he occupied, or managed and controlled, [the other spouse's] property...." *Macris v. Sculptured Software, Inc.*, 2001 UT 43, ¶ 22, 24 P.3d 984 (quoting *Capitol Elec. Co. v. Campbell*, 117 Utah 454, 217 P.2d 392, 394 (1950)). Some additional fact or circumstance is needed to establish that a person acts as the agent of his or her spouse. *Id.* The record discloses no clear fact or circumstance that would have intimated to Lowell that Ms. Naylor acted as Mr. Ellsworth's agent sufficient to bind him to the arbitration agreement.

¶ 22 Finding no nonsignatory estoppel as relied on by the district court and, further, finding no evidence of an agency relationship between the spouses, we conclude that the district court erred in finding that Mr. Ellsworth participated in the contract in a manner that would manifest his assent to the arbitration agreement.

## CONCLUSION

¶ 23 The facts of the case, even as alleged by Lowell, do not indicate direct and specific evidence of an agreement to arbitrate. Mr. Ellsworth's name on the contract documents alone is insufficient evidence of his assent to arbitration. Additionally, any participation by Mr. Ellsworth was insufficient to bind him to the agreement to arbitrate under the theories of nonsignatory estoppel or agency. The district court erred in granting summary judgment for Lowell Construction Company and dismissing Mr. Ellsworth's complaint. Mr. Ellsworth is entitled to judgment as a matter of law, and the decision of the district court is reversed and the case remanded.

¶ 24 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.