**2015 UT App 272**

## THE UTAH COURT OF APPEALS

SOLID Q HOLDINGS LLC,
Appellee,
*v.*
ARENAL ENERGY CORPORATION, RICHARD REINCKE,
AND ERIC JOHNSON,
Appellants.

Memorandum Decision
No. 20140252-CA
Filed November 12, 2015

Fourth District Court, Provo Department
The Honorable Lynn W. Davis
No. 130401096

Paul W. Jones, Attorney for Appellants

Patrick J. Ascione, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and MICHELE M.
CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1    Arenal Energy Corporation, Richard Reincke, and Eric
Johnson appeal from the district court's order denying their
motion to compel arbitration in their dispute with Solid Q
Holdings LLC (Solid Q). We affirm.

¶2    In July 2012, Solid Q extended a loan to Arenal Energy
Corporation, for which the two entities executed a promissory
note (the Note). Reincke and Johnson, who established Arenal
Energy Corporation, each personally guaranteed the Note.
Although the Note contained an integration clause, it did not
include any provision that would require the parties to arbitrate

claims arising from it. The parties subsequently amended the Note several times but never added an arbitration clause.

¶3     Meanwhile, Arenal Energy Corporation entered into separate contracts with Solid Q's principals, Shaun and Brittni Shelton, for their individual consulting services (the Consulting Agreements).[1] These agreements had integration clauses. But, unlike the Note and its various amendments, the Consulting Agreements contained arbitration clauses which provided that Arenal Energy Corporation and the Sheltons "agree[d] to submit any dispute pertaining to [the Consulting Agreements] to arbitration prior to commencing any legal action."

¶4     Arenal Energy Corporation eventually defaulted on the Note. Consequently, Solid Q initiated this lawsuit against Arenal Energy Corporation, Reincke, and Johnson (collectively, Arenal) on the Note, raising claims of breach of contract, breach of contract on personal guarantees, civil conspiracy, and fraud. In response, Arenal filed a motion to stay the proceedings and compel arbitration, asking the district court to enforce the arbitration clause in the Consulting Agreements and to order Solid Q's claims to arbitration. Arenal asserted that even though Solid Q was not a signatory to an agreement with an arbitration provision, the arbitration clause in the Consulting Agreements applied to Solid Q's lawsuit because Arenal's breach-of-contract claims against the Sheltons were "based entirely on the same facts, relationships and . . . disputes" as Solid Q's claims arising on the Note. Solid Q countered that the Note did not have an arbitration provision and that the Note and the Consulting Agreements were wholly unrelated.

---

1. By its terms, the Note is governed by Utah law. In contrast, the Consulting Agreements indicate that they are governed by Texas law.

¶5 The district court denied Arenal's motion to compel arbitration without prejudice. It reasoned that "there is an insufficient basis to compel arbitration where [Solid Q] has not executed an arbitration agreement, and where [Arenal admits] that [Solid Q] has signed no arbitration agreement." Arenal now appeals in accordance with Utah Code section 78B-11-129(1)(a).

## I. Motion to Compel Arbitration

¶6 Arenal challenges the district court's decision to deny its motion to compel arbitration. "[W]hen a district court denies a motion to compel arbitration based on documentary evidence alone," we review that decision for correctness. *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, ¶ 11, 245 P.3d 184. But to the extent Arenal contends the district court should have equitably estopped Solid Q from avoiding arbitration, we generally afford deference to the district court's decision whether to apply equitable estoppel principles to the facts of a case. *See Glew v. Ohio Sav. Bank*, 2007 UT 56, ¶ 19, 181 P.3d 791.

¶7 As in the district court, Arenal admits on appeal that "Solid Q Holdings is not itself [a] signatory to an arbitration provision" but argues Solid Q is estopped from refusing to arbitrate. According to Arenal, Solid Q's claims on the Note and Arenal's counterclaims under the Consulting Agreements "are based entirely on the *same* facts, relationships and *inseparable* disputes." In essence, it contends that, as a signatory to an arbitration agreement, it has the right to compel arbitration with Solid Q, which is a nonsignatory to the arbitration agreement and which originally brought suit against Arenal under a separate contract.

¶8 "The general rule of arbitration agreements is that one who has not manifested assent to an agreement to arbitrate cannot be required to submit to arbitration." *Ellsworth v. American Arbitration Ass'n*, 2006 UT 77, ¶ 19, 148 P.3d 983. But, "under certain circumstances, a nonsignatory to an arbitration

agreement can enforce or be bound by an agreement between other parties." *Id.* In particular, Arenal relies on the estoppel exception recognized in *Ellsworth*, in which the Utah Supreme Court determined a signatory can enforce an arbitration provision of a contract if a nonsignatory sues under the contract or seeks to benefit from that contract. *Id.* ¶¶ 19 & n.11, 20 & n.12, 22.[2] The *Ellsworth* court ultimately held that "the nonsignatory estoppel exception does not apply to . . . a nonsignatory who is not suing on the contract and who has not received direct benefits from the contract." *Id.* ¶ 20. The rationale behind this exception is to prohibit a nonsignatory from having it both ways—seeking to benefit from an agreement while attempting to avoid the duties imposed by that same agreement. *See id.*

¶9      The nonsignatory estoppel exception does not apply here for two reasons. First, Solid Q is not suing based on the Consulting Agreements. Instead, Solid Q is suing Arenal for claims arising on the Note—an instrument without an

---

2. The *Ellsworth* court also identified other rationales for binding a nonsignatory to an arbitration agreement. *See Ellsworth v. American Arbitration Ass'n*, 2006 UT 77, ¶ 19 n.11, 148 P.3d 983. These rationales include incorporation by reference, assumption, agency, veil-piercing or alter-ego, and third-party beneficiary. *Id.* Because Arenal does not argue in its opening brief that these other rationales apply to this case, we do not consider them. In its reply brief, Arenal cites Texas case law in an apparent effort to argue that Solid Q should be compelled to arbitrate based on agency principles. But because an argument initially raised in an appellant's reply brief is generally considered waived, we will not address this argument further. *See Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540 (explaining that issues first raised in the reply brief are considered waived "to prevent the resulting unfairness to the respondent" where "the respondent had no opportunity to respond").

arbitration provision. Second, beyond pointing out that the Sheltons—who are signatories to the Consulting Agreements— own Solid Q, Arenal has not alleged that Solid Q has received direct benefits from the Consulting Agreements.

¶10    Nevertheless, relying on a variation of the estoppel exception in other jurisdictions, Arenal contends that "when a non-signatory Plaintiff's claims are 'intertwined' with claims under another agreement[] containing a broad arbitration clause, *all* of the Plaintiff's claims are arbitrable." But, even under this variation, Arenal's arguments are misplaced.

¶11    Assuming, without deciding, that this variation would comport with Utah law, the cases Arenal identifies do not support the proposition that this version of equitable estoppel could apply to estop a *nonsignatory* from avoiding arbitration. Rather, the cited cases indicate only that a nonsignatory can force a signatory to arbitrate pursuant to a contract when "the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory." *Id.* ¶ 20 n.12 (citing *Bridas S.A.P.I.C. v. Government of Turkm.*, 345 F.3d 347, 360–61 (5th Cir. 2003)).[3] Indeed, the Fifth Circuit has

---

3. *See, e.g.*, *Bridas S.A.P.I.C. v. Government of Turkm.*, 345 F.3d 347, 360–61 (5th Cir. 2003) (stating that the "simple fact that [the signatory's] claims against . . . [the nonsignatory] are inextricably intertwined . . . is insufficient, standing alone, to justify the application of equitable estoppel" to the nonsignatory); *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 628–29 (6th Cir. 2003) ("When only an indirect benefit [from the contract containing the arbitration provision] is sought, . . . it is only a signatory that may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract."); *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 526–28 (5th

(continued…)

acknowledged that the version of estoppel that Arenal's argument depends upon

> applies only to prevent a *signatory* from avoiding arbitration with a nonsignatory when the issues the *nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed*. [B]ecause arbitration is guided by contract principles, the reverse is not also true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party.

*Bridas*, 345 F.3d at 361 (alteration in original) (citations and internal quotation marks omitted). This rule "makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory." *Id.* Thus, the cases Arenal cites are inapposite.[4]

---

(…continued)
Cir. 2000) (estopping a signatory plaintiff from relying upon the defendants' status as nonsignatories to prevent the defendants from compelling arbitration).

4. Arenal also cites two cases for the proposition that "a claim against a non-signatory 'that is based upon the same operative facts and is inherently inseparable from the claims against a signatory will always contain issues referable to arbitration under an agreement in writing.'" (Quoting *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002).) The cited discussions in these two cases, however, address whether a nonsignatory with inherently inseparable claims brought against it is entitled to a stay pending the outcome of a signatory's arbitration under the

(continued…)

¶12   In sum, because the estoppel exceptions that Arenal relies on apply only to prevent a signatory's attempt to avoid arbitration, *see id.*, or to prevent a nonsignatory's attempt to benefit from an agreement while seeking to avoid that same agreement's arbitration provision, estoppel does not apply here, *see Ellsworth*, 2006 UT 77, ¶ 20. Solid Q did not sign the Consulting Agreements containing the arbitration provision and never sued Arenal on those agreements. Moreover, Arenal has not alleged that Solid Q even benefitted from the Consulting Agreements. Accordingly, we decline Arenal's invitation to apply equitable principles to this case and thus we affirm the district court's order denying Arenal's motion to compel arbitration.

## II. Attorney Fees On Appeal

¶13   Solid Q seeks an award of attorney fees pursuant to rule 33 of the Utah Rules of Appellate Procedure because, it argues, this appeal was frivolous and only brought for delay. Arenal does not respond to Solid Q's rule 33 argument.

¶14   Rule 33 allows this court to award "just damages" to the prevailing party, which may include reasonable attorney fees, if it determines that an appeal "is either frivolous or for delay." Utah R. App. P. 33(a). "[A] frivolous appeal . . . is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id.* R. 33(b). An appeal is brought for delay if it "is one interposed for any improper purpose such as to harass, cause needless increase in the cost of litigation, or gain time that will benefit only the party filing the appeal." *Id.* The Utah Supreme

---

(…continued)
Federal Arbitration Act. *See Hill*, 282 F.3d at 347–48; *Harvey v. Joyce*, 199 F.3d 790, 795–96 (5th Cir. 2000). These cases therefore do not lend support to Arenal's position.

Court has indicated that the imposition of rule 33 sanctions "is a serious matter and only to be used in egregious cases, lest the threat of such sanctions should chill litigants' rights to appeal lower court decisions." *Redd v. Hill*, 2013 UT 35, ¶ 28, 304 P.3d 861. Thus, sanctions under rule 33 are "appropriate for appeals obviously without merit, with no reasonable likelihood of success, and which result in the delay of a proper judgment." *Id.* (citation and internal quotation marks omitted).

¶15    We conclude that Arenal's appeal is not an egregious case and therefore sanctions are not appropriate. As the district court observed, "the *Ellsworth* case appears to have opened the door for Utah courts to consider [estoppel and] the other non-signatory exceptions" to the general arbitration rule. Even though Arenal's arguments to extend existing law are unavailing on appeal, the issues it raises are neither frivolous nor brought solely for delay. Accordingly, we decline to award Solid Q attorney fees under rule 33.

CONCLUSION

¶16    Arenal has not demonstrated that Solid Q is a nonsignatory that may be bound by an arbitration agreement between other parties. We therefore affirm the district court's order refusing to compel arbitration. Because we affirm the district court's order, Solid Q is entitled to its costs. *See* Utah R. App. P. 34(a) ("[I]f a judgment or order is affirmed, costs shall be taxed against appellant . . . ."). But an award of attorney fees incurred on appeal to Solid Q is not merited under rule 33 of the Utah Rules of Appellate Procedure.

_____